HENRY D. FILLMORE & another *vs.* GEORGE T. JOHNSON.
GEORGE T. JOHNSON *vs.* HENRY D. FILLMORE & another.

Suffolk.     January 12, 1915. — May 28, 1915.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & CROSBY, JJ.

*Contract*, Construction. *Estoppel. Evidence*, Admissions by conduct. *Reference and Referee. Practice, Civil*, Auditor's report, Exceptions, Verdict. *Interest. Words*, "Actual cost."

Where a millowner, who theretofore had been engaged in manufacturing large sheets of tissue, called jumbo or parent rolls, which he sold to manufacturers · who reduced the tissue to the size and condition in which it was sold to dealers

as "toilet" paper, made a contract with a customer who agreed to take the entire product of his mill "finished in tissue toilet paper, rolls and packages, made and put up in such regular standard marketable shapes and sizes" as the customer should determine to be best suited for his business, and the price to be paid was based on the number of pounds of finished toilet paper contained in each case, at the market price per pound of tissue in parent or jumbo rolls, to which was to be added five per cent and the actual cost of finishing the tissue into toilet paper rolls and packages, it was *held*, that the five per cent was intended as the millowner's profit or compensation for doing work of a kind not theretofore undertaken by him, and that the "actual cost of finishing" included a shrinkage in weight of from ten to fourteen per cent in reducing the parent rolls of tissue to "toilet" paper, and also included the rent of premises used in finishing the paper, also charges for insurance, for depreciation of the part of the millowner's plant and machinery used for finishing, and for the personal services of a superintendent and bookkeeper, the items making up the cost being substantially the same as those that would be deducted from gross receipts in ascertaining net profits.

In an action brought by the millowner against his customer on the contract stated above, it appeared that, at a time when the plaintiff and the defendant were at issue as to the actual cost of finishing, the plaintiff sent to the defendant a letter in which he stated that the finishing cost was so high that the defendant could not afford "to pay the price it costs" and that "every case of paper we have shipped you has cost us more than you have been willing to pay for it therefore we will ask you to secure your requirements elsewhere at the earliest possible moment we will in the meantime try and take care of your orders." It appeared that, upon the finding of the jury under the instructions of the presiding judge, the plaintiff was right as to the price insisted upon by him. *Held*, that the letter did not estop the plaintiff from claiming damages from the defendant for not taking paper after its date.

In the same action it appeared that the plaintiff sent to the defendant a letter in which he said, "we will arbitrate the new prices and meet you in every way that is mutually fair, that is fair to you and also to us," and that the defendant refused to leave the matter to arbitration. At the trial the defendant contended that his position at the time the plaintiff made this proposition was that, while the cost of finishing demanded by the plaintiff was wrong, he was ready to pay it if it was right. The plaintiff contended that the defendant at that time refused to pay the price claimed by the plaintiff whether it was right or wrong. The plaintiff argued that, if the defendant had taken the position then that he took at the trial he would not have refused to go to arbitration as to the actual cost of finishing, and that his refusal was some evidence that his position then was not what he contended at the trial that it was. The presiding judge instructed the jury that, although the defendant was not bound to arbitrate any question if he did not care to, his failure to arbitrate the actual cost of finishing could be taken into account by the jury if they thought it had any bearing upon the position which he then took. *Held*, that there was no error in the instruction thus qualified.

Where in an action of contract the plaintiff offers in evidence an auditor's report in his favor, and the defendant objects to a portion of the report, which is in fact objectionable, he has no right to except to the admission in evidence of this part of the report but should move to have the objectionable portion stricken

out, and an exception by the defendant to the introduction in evidence of the objectionable portion which has not been stricken out must be overruled.

Where in an action of contract the plaintiff has introduced in evidence an auditor's report in his favor, which contains certain erroneous portions that have remained as a part of the report because the defendant has failed to ask to have them stricken out, the defendant is entitled to have the jury instructed that in so far as the auditor's report differs from the rulings of the judge it must be disregarded, and an exception to a refusal to give such an instruction will be sustained.

In an action of contract, where the declaration contains two counts and the defendant admits that the plaintiff is entitled to recover on the second count but contests his liability upon the first count and the jury return a general verdict for the plaintiff on both counts for a certain amount of money, from which it is impossible to know what part of the damages was awarded on the second count and how much upon the first count, if the defendant upon exceptions shows that the presiding judge erred in refusing to give an instruction to the jury to which the defendant was entitled, so that his exceptions must be sustained, the verdict cannot stand for any amount.

In an action of contract for the price of certain merchandise furnished by the plaintiff under a contract in writing, where by the terms of the contract the agreed price for cash shipments was to be due thirty days thereafter, *it seems*, that the plaintiff, if entitled to recover, can recover interest computed on the amount due for each shipment from the expiration of such thirty days without showing any demand for payment.

LORING, J.   The circumstances which gave rise to this action and cross action were in substance as follows.   For convenience we shall speak of Fillmore and Slade as the plaintiffs and Johnson as the defendant, although Johnson is the plaintiff in the cross action and Fillmore and Slade are in that action the defendants.

Before the contract hereinafter stated between the plaintiffs and the defendant the plaintiffs were the owners of a mill at which they manufactured tissue out of which "toilet" paper was made. The tissue (which was the product of their mill) was manufactured in large sheets called jumbo or parent rolls.   These parent rolls of tissue theretofore had been sold by the plaintiffs to manufacturers, who reduced them to the size and condition in which they were sold to retail dealers who again sold it for use as "toilet" paper.   By an agreement between the plaintiffs and the defendant dated October 5, 1908, but in fact signed on January 15, 1909, the defendant agreed to take the entire product of the plaintiffs' mill, "finished in tissue toilet paper, rolls and packages, made and put up in such regular standard marketable shapes

and sizes" as the defendant should determine best suited for his business.    The price to be paid was based on the number of pounds of finished toilet paper contained in each case, at the market price per pound of tissue in parent or jumbo rolls, to which was to be added an amount of five per cent and the actual cost of finishing the tissue into toilet paper rolls and packages.    Settlements were to be made thirty days from the date of shipment, and the defendant was to have a discount of three per cent at the time of settlement which however was not to apply to that part of the price made up of the finishing cost.    The market price of tissue was to be fixed semiannually, on the first days of January and July for the succeeding six months, and the deliveries were to be f.o.b. on cars at North Bennington in Vermont, the place where the plaintiffs' mill was situated.    A copy of this part of the contract is set forth in full in the footnote.*    When the contract was made neither party was ready to carry it into effect, but in April, 1909, the plaintiffs' mill was ready to take on the work of "finishing" tissue into "toilet" paper in accordance with the contract.    It was then agreed by the parties that the market price of tissue was four cents per pound and should be so taken until July first of that year.    The auditor to whom the case was referred found that at this time (April, 1909) the plaintiffs submitted as an estimated cost of manufacturing the tissue into toilet paper "$1.71 per case," but that the defendant would not agree to that as a correct price for the cost of finishing.    At the plaintiffs' request he submitted a price he was willing to pay. Thereupon the plaintiffs agreed to go ahead and try manufacturing

---

* "The same to be based on the number of pounds of tissue contained in each case at the fair market price per pound of equal quality and weight tissue, where the same is sold to manufacturers of toilet paper in parent or jumbo rolls; the prevailing market price to be fixed semi-annually on the first day of January and July for the succeeding six months. There is also to be added to the value of the number of pounds of tissue contained in a case an amount of five (5) per cent; to the above combined amount the actual cost of finishing the tissue into toilet paper rolls and packages is to be added, constituting the cost per case to be paid by the said Johnson, said price to be F.O.B. cars No. Bennington, Vermont. Settlements to be made thirty days from date of shipment, and a discount of three (3) per cent is to be allowed at time of settlement on value of the invoice excepting the said discount is not to apply on that part of the case price charged as finishing cost."

on the terms suggested by the defendant, leaving open the question of finishing cost. The dispute as to the amount of the finishing cost "remained a continual subject of debate, by correspondence and interview, during the summer and fall of 1909." The plaintiffs filled such orders as were given by the defendant and invoiced their shipments at prices suggested by the defendant. The auditor made this further finding: "In making up this particular item [of the actual cost of finishing] Fillmore and Slade included an estimate of fifty cents per case to cover such fixed charges as heat, light, rent, office expenses, superintendence, repairs, depreciation, labor of shipping and a number of incidentals, which I find were all properly chargeable to manufacturing expense as finishing cost under the contract. The other and direct expenses of converting the big rolls and preparing the product for shipment consisted of charges for perforating, tightening, bands, including putting them on, cores, shooks, assembling shooks into cases, and shipping, all of which added to the charge per case of fifty cents made a total of one dollar and seventy-one cents ($1.71)." The auditor found that the charge of $1.71 a case "for the actual cost of finishing" was correct. He found that on the first of July the parties agreed that the market price per pound of tissue was four cents and that on December 13 the defendant refused to pay the price of $1.71 asked for cost of finishing and refused to take goods and merchandise on that basis. The plaintiffs thereupon notified the defendant that they would not ship any more goods at "the prices which had prevailed previously," and would insist upon $1.71 per case for the "actual cost of finishing." "This proposition" the defendant "declined to agree to." In the following July (July, 1910) the plaintiffs brought the first action now before us. The declaration in this action contained two counts, one (the first count) for damages suffered by them from the defendant's refusal to take the output of their mills from December 13, 1909, to the termination of the contract on January 1, 1912, and the second count for "toilet" paper delivered between November 15 and December 4, 1909. The plaintiffs also claimed interest from January 4, 1910, on the amount due for the "toilet" paper delivered, on the ground that they had made a demand for payment on that day. The cross action brought by Johnson was based on the ground that the contract was broken

by the plaintiffs and not by him. In it he sought to recover the damages suffered by him from the plaintiffs' alleged breach of the contract.

At the trial the defendant asked for thirty-three rulings and took exceptions to the refusal of the judge * to give them. He also took exceptions to five different parts of the judge's charge to the jury. In addition he took an exception when the auditor's report was put in evidence, which will be stated later on. On November 7, 1913, the jury returned a general verdict for the plaintiffs in the first action, in the sum of $4,962.22. In the cross action they found for the plaintiffs in the main action.

In his argument here the defendant has cut adrift from the exceptions which he took at the trial, and has contended that there are six questions of law for this court to decide. These questions are stated in the footnote.† We shall take up these questions of law in the order in which they are stated by the learned counsel for the defendant.

1. The first two propositions upon which the defendant insists are that the question of what items ought to be included in the "actual cost of finishing" was a question of law for the court and as matter of law that many of the items included by the plaintiffs in the charge of $1.71 per case for "actual cost of finishing" were items which ought not to be included in it. One of the items

---

* *Lawton*, J.

† "1. Had the plaintiffs a legal right to charge, either as a part of the finishing cost or in any other way, for loss occasioned by 'shrink?'

"2. Had the plaintiffs a legal right to charge as a part of the finishing cost either for insurance on any part of their plant, or for depreciation of any part of their plant or machinery, or for rent of any part of their premises, or for personal services of the plaintiffs themselves as 'superintendent' or for 'office work,' or for other things mentioned at the bottom of page 11 of the bill of exceptions?

"3. Should the court have ruled that 'the actual cost of finishing' was not a matter of estimate which could be made in advance?

"4. Should the court have instructed the jury as to the plaintiffs being estopped by their letter of December 4th, from claiming damages for not taking their paper after that date?

"5. Should the court have instructed the jury that Johnson was under no obligations to arbitrate the proposed estimated finishing costs?

"6. Was that part of the auditor's report to which the defendant excepted properly admitted?"

to which he objected was the loss occasioned by the fact that five hundred pounds of tissue were shrunk in the course of manufacturing to about four hundred and thirty to four hundred and fifty pounds of finished "toilet" paper. Other items (included in the cost of $1.71) objected to by him were what were called overhead charges. The defendant particularly objected to the following items being included in the cost of finishing, namely, items for rent of premises used in finishing the paper, for insurance, depreciation of that part of the plaintiffs' plant and machinery which was used for finishing, and for personal services of a superintendent and bookkeeper. Upon these points the presiding judge in his charge to the jury said: "I must inform you here [that] what the contract means is for me to say, it is not for you. You will have to take my say about that." Having instructed them that the construction of the contract was a matter to be determined by him, the judge went on to instruct them that the question of what charges were to be included in finishing cost was a question of fact to be decided by them. In that connection he put to them the case of a man who bought tissue from a manufacturer and then converted it into "toilet" paper; and he told the jury that whatever expenses would be incurred under those circumstances would be the expenses which these plaintiffs had a right to include in the "actual cost of finishing the tissue into toilet paper rolls and packages" under the contract between the plaintiffs and the defendant. It is the contention of the defendant that the "actual cost" is restricted to money paid out and therefore cannot include the particular items mentioned above, and in that connection he relies upon *Lexington & West Cambridge Railroad* v. *Fitchburg Railroad*, 9 Gray, 226; *Newton, petitioner*, 172 Mass. 5, 10; *Old Colony Railroad, petitioner*, 185 Mass. 160. It is established by these and other cases that in certain connections actual cost does mean money paid out. But we are of opinion that the words "actual cost" in this contract cannot be so limited. It appeared that there was a shrinkage in weight of ten to fourteen per cent in reducing the tissue in parent rolls to "toilet" paper. This loss in weight was a cost of finishing which would have been incurred had the manufacturer of "toilet" paper bought his tissue in the market and finished it himself. In our opinion it was and without question could be found by

the jury to be a cost of finishing in the case at bar where the plaintiffs (who theretofore had been manufacturers of tissue only) had undertaken to convert the tissue (the product of their factory) into "toilet" paper for the defendant under this contract. Unless this loss of ten to fourteen per cent in weight was a part of the "actual cost of finishing," the plaintiffs had made a contract which on its face seemingly was bound to end in a loss. The defendant's answer to this is that the five per cent which by the terms of the contract was to be added "to the value of the number of pounds of tissue contained in a case" was to cover this and other similar losses. But an addition of five per cent does not make good a shrinkage of ten to fourteen per cent. Manifestly the five per cent was added to the "actual cost of finishing" as the plaintiffs' profit or compensation for doing work of a kind not theretofore undertaken by them. The other items included by the plaintiffs in the "actual cost of finishing" and objected to by the defendant stand on substantially the same ground.

We are of opinion that where, as in the case at bar, the price agreed upon is the cost actually incurred, to which is to be added a percentage for profit or compensation, the items making up the cost are substantially if not exactly the same as the items to be deducted from gross receipts to ascertain net profits. It is settled in such cases that overhead charges here objected to by the defendant are items to be deducted from gross, to ascertain the amount of net, profits. *Stone* v. *Wright Wire Co.* 199 Mass. 306. *Stein* v. *Strathmore Worsted Mills, ante,* 86.

This disposes of the first two propositions put forward by the defendant.

2. There was confusion of thought both on the part of the plaintiffs and on the part of the defendant as to their rights under the contract. There was evidence from which the jury could have found that the plaintiffs insisted not only that the defendant should pay "$1.71 per case" for the actual cost of finishing, but in addition that they insisted that he must agree in advance that that was the correct cost of finishing, and that if he did not agree to it in advance they (the plaintiffs) would not continue their deliveries under the contract. The presiding judge told the jury that if the plaintiffs refused to continue deliveries under the contract unless the defendant paid $1.71 per case

for the actual cost of finishing, and if they were wrong as to that being the actual cost of finishing, they had no right to recover on the first count in the principal action. He then referred to the fact that the defendant had contended throughout that $1.71 per case was greater than the cost of finishing the tissue. With respect to that he instructed the jury that if the position taken by the defendant was that this amount was wrong but that he was ready to pay whatever was right, there was no breach on his part. With respect to the evidence that the plaintiffs had insisted upon the defendant's agreeing in advance to the correctness of the price insisted upon by the plaintiffs as the true cost of finishing, the judge told the jury that the defendant was not bound to agree in advance as to the true cost, and that if the plaintiffs refused to deliver because the defendant would not agree in advance to the true cost the plaintiffs had no right to recover under the first count. In other words the instructions given to the jury by the court were in accordance with the third proposition insisted upon by the defendant.

3. On the fourth of December the plaintiffs wrote a letter to the defendant in which they stated that their finishing cost was so high that "you [the defendant] cannot afford to pay the price it costs every case of paper we have shipped you has cost us more than you have been willing to pay for it therefore we will ask you to secure your requirements elsewhere." The full letter is given in the footnote.* The defendant's contention con-

---

* "Geo T Johnson & Co          "No Benn Vt. Dec 4/09
      Boston Mass
Gentlemen
    We have tried out the making of 10# paper and find it is impossible for us to make it and also the shrink between parent roll and toilet roll and the finishing cost is so high that you cannot afford to pay the price it costs every case of paper we have shipped you has cost us more than you have been willing to pay for it therefore we will ask you to secure your requirements elsewhere at the earliest possible moment we will in the mean time try and take care of your orders, you are sending them in faster than we can make them at present you doubtless will have no trouble in securing the goods elsewhere as you had several mills that wanted the business on the same terms you offered us. do not send any more orders for this month as you allready have sent in more than we can make.
                                          Very Truly
                                          Fillmore & Slade S."

tained in the fourth proposition of law insisted upon by him is that the judge should have instructed the jury that by this letter the plaintiffs were estopped from claiming damages from the defendant for not taking paper after that date. The judge refused so to rule and we are of opinion that in doing so he was right. This letter of December 4 was written at a time when the plaintiffs and the defendant were at issue as to the actual cost of finishing, the plaintiffs insisting that $1.71 was correct and the defendant insisting that it was not. Under these circumstances the plaintiffs in effect wrote to the defendant that the finishing cost insisted upon by them was so high that according to the plaintiffs' statement the defendant could not afford to pay it, and they suggested that the contract had better come to an end and he had better go elsewhere for the "toilet" paper he required. This did not create an estoppel if (as the jury must have found under the instructions of the judge) the price insisted upon by the plaintiffs was correct and all the plaintiffs did insist upon was that that price should be paid when the goods were delivered.

4. The next proposition is that the defendant was under no obligation to arbitrate the proposed estimate of finishing cost. This proposition arose in connection with a letter written by the plaintiffs to the defendant dated December 18, 1909, in which they said in answer to a letter of the defendant of December 16, "We will arbitrate the new prices and meet you in every way that is mutually fair, that is fair to you and also to us." The letter in full is set forth in the footnote.*

As we have already said, it was the defendant's contention at the trial that his position in December was that while the cost of finishing demanded by the plaintiff was wrong he was ready to pay it if it was right. On the other hand it was the plaintiffs'

---

"North Bennington, Vt., Dec. 18/09

* "Geo. T. Johnson & Co.

Boston Mass

Gentlemen. Answering your letter of the 16/09 will say we will arbitrate the new prices and meet you in every way that is mutually fair, that is fair to you and also to us whatever we do let us do it at once, we are waiting on you, please give us your views at once, when here you were satisfied the old prices were not high enough, let us know what you consider right.

Very Truly

Fillmore & Slade per Slade."

contention at the trial that the defendant in December took the position that he would not pay $1.71 a case for finishing, whether that was right or wrong.  At the trial the plaintiffs argued that, if the defendant's position in December had been in fact what he now contends that it was, he would have been glad to have gone to an arbitration on the actual cost of finishing, and that his refusal to do so was some evidence that his position then was not in fact what he now contends that it was.  The jury were in effect told that the defendant was not bound to arbitrate any question if he did not care to.  But that on the question of what position the defendant took in December, 1909, his failure to arbitrate the actual cost of finishing could be taken into account by the jury if they thought it had any bearing on that question.  The judge ended the portion of his charge which dealt with this matter in these words: "Bear in mind just what the point of that arbitration is: it is simply evidence to be given such weight as you think it should be given, none at all if you say none at all or such weight as the plaintiff says it should be given as bearing upon the question of what was his real intention when he said 'Well, I will pay the contract prices; those aren't the contract prices, and further, I won't pay them.'"  We are of opinion that there was no error in the judge's charge with respect to the defendant's refusal to arbitrate.

5.  When the auditor's report was put in evidence the defendant "objected to the introduction of all that portion of the report contained beginning in the last paragraph at the bottom of page 13, as follows: 'That by (Johnson's) refusal to assent to the schedule of prices asked by (Fillmore and Slade) when the subject was finally considered on or about December 13, 1909, [he] violated the contract and then committed a breach of the same, and subsequently by refusing to arbitrate or consider the prices asked by the plaintiffs, and by refusing on January 1, 1910, to pay the amount then due for sales to him consummated in the previous months of November and December, for which demand for payment had been made, all constitute a breach and final repudiation of the contract between the parties,' but the court overruled the objection and the defendant" took an exception.  This exception is not well taken.  This was part of the auditor's report.  The plaintiffs had a right to introduce the auditor's report in evidence.

The portion of the auditor's report objected to by the defendant ought to have been stricken from the report both because it was a conclusion of law and because (so far as a part of it goes) it was wrong. But that was ground for striking out that portion of the auditor's report, not for its not being introduced in evidence so long as it was not stricken out.

From what has been said already it is plain that a part of the portion of the auditor's report objected to by the defendant was wrong. It was wrong as matter of law to rule "that by his (Johnson's) refusal to assent to the schedule of prices asked (by Fillmore and Slade) when the subject was finally considered on or about December 13, 1909, [he] violated the contract and then committed a breach of the same." It was also wrong in the statement that the defendant "subsequently by refusing to arbitrate or consider the prices asked" by the plaintiff committed a breach of the contract. Whether it was wrong in the conclusion that the defendant "by refusing on January 1, 1910, to pay the amount then due for sales to him consummated in the previous months of November and December, and for which demand for payment had been made" committed a breach of the contract, need not be determined now. Although the exception taken to the refusal of the judge to exclude this portion of the auditor's report, when it was offered in evidence, was not well taken, there were three rulings (set forth in the footnote) * asked for by the defendant which ought to have been given. They were not given by the judge either in terms or in substance. The defendant's proper remedy was (as we have already said) to have had this portion of the auditor's report stricken out. But so long as it remained in the report he was entitled to have the jury told that so far as the auditor's report differed from the rulings of the judge the auditor's report was to be disregarded. The exceptions taken to the refusal to give these three rulings must be sustained.

---

* "16. That in and so far as the auditor's report contains rulings of law in conflict with the rulings of law given by the court, then it must be disregarded.

"17. That if any finding or conclusion of the auditor is based upon a mistake in law, such finding or conclusion should be disregarded.

"18. That if the auditor finds Johnson broke the contract because the auditor finds that Johnson refused to agree in advance to pay a specified amount as the finishing costs, then that finding should be disregarded."

6. We have dealt with the only questions argued. We treat points not argued as waived.

7. As we have already said, the verdict returned by the jury in the first action was a general verdict for the plaintiffs on both counts. The defendant at the trial admitted that the plaintiffs were entitled to recover on the second count. They claimed interest from January 4, 1910, on the ground that they made demand on that day for the sum due them for the "toilet" paper delivered and covered by the second count. The judge left it to the jury to include interest from January 4, 1910, or from the date of the writ as they found or did not find that there was a demand made upon that day. It is impossible to know, therefore, how much of the verdict of $4,962.22 was a finding on the second count and how much was a finding on the first count. The result is that the verdict cannot stand for any amount.

8. To prevent misapprehension we think we ought to add that it would seem that the ruling of the judge as to the date from which interest was to run was right only because of the claim for interest made in the declaration. The claim in the declaration was for interest from January 4, 1910. The amount due was by the terms of the contract due thirty days after shipment. It would seem that interest ran from the due date named in the contract without a demand being made. This point is not before us for decision and we add this to avoid misapprehension.

The entry in both cases must be

*Exceptions sustained.*

*O. Storer*, for Johnson.

*F. P. Garland*, (*H. Tirrell* with him,) for Fillmore and Slade.