WALTON MOTOR COMPANY, a corporation, Plaintiff,

v.

AMERICAN HARDWARE MUTUAL INSURANCE COMPANY, a corporation, Defendant.

Civ. No. 4157.

United States District Court
D. Wyoming.

Dec. 2, 1958.

A. G. McClintock, Cheyenne, Wyo., for plaintiff.

Norman B. Gray of Ellery, Gray & Hickey, Cheyenne, Wyo., for defendant.

KERR, District Judge.

This action involves a single question, viz.: the meaning of the words "at actual cost to the insured" as used in an automobile dealer's open policy.

For the, sake of brevity the Walton Motor Company, a corporation, will be referred to as "plaintiff" and the American Hardware Mutual Insurance Company, a corporation, will be referred to as "defendant".

The material facts are not in dispute. The plaintiff is engaged in selling new and used cars and trucks in the City of Cheyenne. On December 3, 1956, the defendant issued to the plaintiff its policy of insurance for a period of one year insuring plaintiff's vehicles against risk of loss for various causes, including hail storms.

On August 2, 1957, a severe hail storm struck Cheyenne and plaintiff sustained serious damage to its new and used vehicles. Notice and proof of loss were given

to the defendant in accordance with the terms and conditions of the policy. Plaintiff estimated its loss in damages at $8,805.64. The insurance company elected under the terms of the policy to have plaintiff restore its loss by furnishing labor and materials necessary for repair of the automobiles at "actual cost to insured". The parties being unable to agree on the meaning of the language in the policy this litigation followed.

It is appropriate to quote the provision of the policy that gives rise to this controversy:

"9. *Replacements and Repairs at Actual Cost.* In the event of loss, the Insured shall, if requested by the Company, replace the property lost, or furnish the labor and materials necessary for repairs thereto, at actual cost to the Insured."

The plaintiff contends that the coverage afforded is the cost of repair at retail. The defendant, on the other hand, asserts its liability is limited by excluding from such loss any element of profit or overhead charge.

### Evidence.

Following the hail storm Mr. Wilkins, a long time employee and foreman of the body shop operated by plaintiff, proceeded to make estimates of cost of repair to each of the damaged vehicles. He testified he had not examined each car or truck prior to the storm but that he was familiar with hail damage and his estimates are predicated upon his personal knowledge of damage resulting from hail. His estimates were made on a retail basis after viewing and inspecting the damaged vehicles. Each of the estimates is a part of the record of this case. The record does not disclose any issue of disagreement respecting the accuracy of the estimates. Mr. Krumm, an employee of plaintiff, testified that many of the cars and trucks damaged were used vehicles and that in the normal course of business they would have depreciated in value; that the used vehicles were in good condition for sale as

used cars; that the estimates did not include any element of improvement over and above their condition prior to the hail storm; that some of the cars were completely repainted but this fact did not enhance their value for in most instances a repainted car was more difficult to sell than one with the original paint job.

The evidence further shows that following the hail storm the plaintiff was virtually out of business as most of the cars and trucks were stored in unprotected parking lots.

Mr. Malone, adjustor employed by defendant, inspected many of the damaged vehicles and compared the damage against the estimates prepared by Mr. Wilkins; Malone then advised plaintiff that adjustment would be made on the basis of wages actually paid out by plaintiff to its mechanics for labor and the amounts paid by plaintiff to its dealers for parts used in repairs. For example: If a particular estimate showed ten hours labor at $4.25 per hour, but the mechanics were paid $2.12½ per hour, the latter figure and not the first would be allowed for labor. If the retail cost of a part was $10, defendant requested that a discount of 40% be made in order to arrive at dealer's cost.

It will be observed that some of the cars were sold before repaired but the estimates not being disputed it becomes immaterial in the decision of this case whether the cars were sold before or after repair.

The plaintiff submitted its estimate and proof of loss in the amount of $8,-805.64. The defendant submitted to the Court its adjustment of loss on the actual cost basis in the amount of $5,814.-57.

On October 9, 1957, the Crocker Claims Service, a representative of the defendant, in attempting to negotiate a settlement of the damages advised plaintiff by letter (Plaintiff's Exhibit 9), as follows:

"* * * Actually, we feel that we can extend their labor allowance

on to you for the actual cost you pay your repairmen with an additional 10 per cent for overhead cost, but beyond that we have no authority. We hope this answers the company's position on the matter, and is the letter you desired to have written to you. As stated before, the reason we are writing this letter is because of the request of the company fieldman, E. W. Johnsen. If the foregoing offer is acceptable, let us know, and we will draw up the necessary figures for you toward making a settlement on this loss."

The above appears to be a brief résumé of the undisputed material testimony.

■ True, as counsel for defendant argues, the liability is measured by the terms of the contract. The words "actual cost" must, however, be given the natural and reasonable meaning in the light of the facts to which they apply and the circumstances in which they are used.

The courts have frequently been called upon to construe the words "actual cost". A somewhat recent case is Willett, v. Davis, et ux. Wash., 193 P.2d 321, 325. There the Supreme Court of Washington fully discussed the term "actual cost of labor and material". In that case the owners agreed to pay the actual cost of labor performed and material used in the construction of a building. The Court held that taxes for social security, state unemployment and old age benefits were held to be direct labor charges. The Court said at page 328:

"The fact that a contractor is required to pay these payroll taxes is so generally known that the owners must have contemplated that they would be included in 'the actual cost of labor'. The very size of the taxes argues against its being the intention of any contractor operating on a basis of cost plus ten or fifteen per cent to pay out so large a portion of

his compensation in taxes of this character. While there is a division of authority on this proposition, we cannot believe that any owner is so naive as to expect, or any contractor so generous as to intend, that the 6.3% of the labor costs involved in so-called payroll taxes would be paid out of the percentage from which the contractor's compensation must come."

To the same effect see State v. Northwest Poultry & Egg Co., 203 Minn. 438, 281 N.W. 753. The court stated at page 755 of 281 N.W.:

" 'Actual cost' has no common-law significance, and it is without any well understood trade or technical meaning. 'It is a general or descriptive term which may have varying meanings according to the circumstances in which it is used.' "

The leading case on the subject appears to be Fillmore v. Johnson, 221 Mass. 406, 109 N.E. 153, 155, decided by the Supreme Court of Massachusetts in 1915. The Court was there attempting to define the term "actual cost of finishing". The auditor for the company included as a part of the actual cost expense of heat, light, rent, office expense, superintendence, repairs, depreciation, labor of shipping and a number of incidentals. The Court there held that all of these expenses were a part of the "actual cost". The Court said at page 156:

"We are of the opinion that where, as in the case at bar, the price agreed upon is the cost actually incurred, to which is to be added a percentage for profit or compensation, the items making up the cost are substantially if not exactly the same as the items to be deducted from gross receipts to ascertain net profits. It is settled in such cases that overhead charges which are here objected to by the defendant are

items to be deducted from gross, to ascertain the amount of net, profits. Stone v. Wright Wire Co., 199 Mass. 306, 85 N.E. 471; Stein v. Strathmore Worsted Mills, [221 Mass. 86,] 108 N.E. 1029."

In construing the words "at actual cost to the insured" this Court cannot overlook or disregard the silent partner of every modern business in the form of the withholding and payment of unemployment compensation, social security, old age assistance, vacation pay, sick benefit insurance and bonuses. These modern employee benefits are items of expense in the general cost of doing business and just as essential as real and personal property taxes, depreciation of building and equipment, repairs and salaries of administrative officers. To me it would be inequitable to allow the plaintiff to recover *only* for the actual expense of the employees and the wholesale cost of parts when almost its entire operations were engaged in repairing the damage for which it had purchased insurance to protect against loss of property and when such repairs under the defendant's theory would be made at a considerable loss to the plaintiff.

From what I have said I hold that the plaintiff is entitled to recover the sum of $8,805.64, said amount representing the actual cost to the plaintiff for labor and materials necessary for the repair of said vehicles.

 With respect to interest, it is my opinion that under the circumstances of this action the said claim could not be considered liquidated. The prayer for interest will be denied.

Counsel for plaintiff will prepare findings of fact and conclusions of law in conformity with this opinion, together with judgment, within ten days from the date hereof and the clerk will enter an order accordingly.