Lincoln-Sudbury Regional School Dist. *v.* Brandt-Jordan Corp.

LINCOLN-SUDBURY REGIONAL SCHOOL DISTRICT *vs.* BRANDT-JORDAN CORP. OF NEW BEDFORD & another.

Middlesex.   April 7, 1969. — June 3, 1969.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Public Works. Bond,* Bid bond. *Damages,* For breach of bid bond. *Words,* "Clerical or mechanical error," "Unforeseen circumstances."

An error by a selected subbidder on a public construction project which constitutes a "clerical or mechanical error" within the meaning of that term in G. L. c. 149, § 44B (3), as amended through St. 1961, c. 604, § 2, is limited to an error of copying, transference or transcription, including mistakes of arithmetical computation, which occur during the final stages of bid preparation. [118]

A selected subbidder on a public construction project who had submitted his subbid without allowing for work required to be performed as shown on a drawing included in the plans for the project simply because he forgot to take such work into account did not make a "clerical or mechanical error" within the meaning of that term in G. L. c. 149, § 44B (3), as amended through St. 1961, c. 604, § 2, nor was the mistake made by the subbidder one of the "unforeseen circumstances" intended by that term in § 44B, and he was not entitled to a return of his bid deposit. [118]

Upon the failure of the lowest and selected subbidder on a public construction contract to perform his agreement to execute a subcontract with the successful general contractor, the amount of damages under the delinquent subbidder's bid bond to which the awarding authority was entitled under G. L. c. 149, § 44B (3), as amended through St. 1961, c. 604, § 2, was limited to the difference between the delinquent subbidder's subbid price and the next higher subbid price of a subbidder not shown not to be "responsible and eligible," even though pursuant to § 44I (3), as amended by St. 1960, c. 771, § 7, after such failure the general contractor had exercised its right to object to the standing and ability of such next higher subbidder and the awarding authority and the general contractor had selected a third subbidder at a still higher price. [118–119]

CONTRACT.   Writ in the Superior Court dated December 15, 1965.

The action was heard by *Hennessey,* J.

*George C. Caner, Jr.* (*John S. Hopkins, III,* with him) for the plaintiff.

*Joseph M. Corwin* (*Sally A. Corwin* with him) for the defendants.

SPIEGEL, J. In this action of contract the plaintiff seeks to recover damages from the defendant Brandt-Jordan Corp. of New Bedford (Brandt-Jordan) and its surety on a bid bond furnished in connection with a subbid submitted by Brandt-Jordan. A judge of the Superior Court sitting without a jury made a finding for the defendants. The case is before us on the plaintiff's exceptions to the denial of two of its requests for rulings.[1]

The facts do not appear to be in dispute. Brandt-Jordan is a heating and ventilating subcontractor. When the plaintiff solicited general and subbids for the "Job of Additions and Alterations to the Lincoln-Sudbury Regional High School," Brandt-Jordan requested a set of plans and specifications. Subbids were to be filed by May 19, 1965. Brandt-Jordan received the requested plans and specifications on or about May 3, 1965. Within several days of receiving the plans and specifications, the president of Brandt-Jordan, one Neubert, read the specifications. He noticed that the plans relating to the heating and ventilating were set forth on thirteen drawings numbered HV-1 through HV-13. When Neubert unrolled the plans he discovered that drawing HV-1 was not included. He thereupon wrote "'check HV-1'" on a 5" by 8" sheet of paper and placed it in the folder which was to contain the estimate. Neubert then prepared the estimate. "He listed the quantities of the various materials needed for the work, priced the pipe, fittings, valves and labor and sent cards out to suppliers and sub-subcontractors to secure prices for equipment and for work to be performed by sub-subcontractors." The es-

---

[1] "5. Viewing the evidence in all respects most favorable to the defendants, it does not show a 'clerical error' or some other facts coming within the last proviso of G. L. c. 149, § 44B (3). . . . 7. The defendants have not carried their burden in this case."

timate contained ten separate sheets of paper and took about two days to prepare. When finished, Neubert placed it in the folder in which he had previously put the note concerning drawing HV–1.

As the price quotations were received by Brandt-Jordan, they were placed in the folder. On May 18, 1965, Neubert examined the quotations received as of that date and entered the lowest ones on the estimate sheets. He did not see the sheet of paper with the reference to drawing HV–1. On the morning of May 19, 1965, Neubert again examined the estimate sheets and ascertained the items for which no quotations had been received. Again he failed to notice the note. Then, between 10 A.M. and 12 noon (the closing time for the filing of subbids), in accord with the general practice of subbidders for heating and ventilating work, the entire office staff of Brandt-Jordan received quotations by telephone. When the final subbid price was determined, the figure was communicated by telephone to a representative who had been sent to the "place of bid opening" with a blank, signed subbid form. He entered the price on the form and submitted it.

Brandt-Jordan's subbid of $284,346 was the lowest one submitted for heating and ventilating. Frasca Construction Company (Frasca), the general contractor which subsequently submitted the lowest general bid, listed Brandt-Jordan as the heating and ventilating contractor. A few days prior to June 25, 1965, Frasca requested from Brandt-Jordan a breakdown of its subbid price. In preparing the breakdown, Neubert was required to use the estimate sheets from the folder. He saw the sheet of paper referring to drawing HV–1. He immediately obtained a complete set of drawings and discovered that drawing HV–1 contained certain heating and ventilating work which had not been detailed in the other drawings and had not been included in Brandt-Jordan's subbid price.

Brandt-Jordan immediately notified the plaintiff's architect by telephone of the mistake and that it wished to withdraw its subbid. The architect suggested that the request

be made in writing. On June 25, 1965, Brandt-Jordan mailed a letter to the architect requesting that its subbid be withdrawn and that the bid bond it had filed be returned. The contents of the letter were communicated to the plaintiff. The plaintiff denied the request and awarded the general contract to Frasca on June 30, 1965. On July 2, 1965, Frasca sent Brandt-Jordan a subcontract which Brandt-Jordan returned unsigned. Brandt-Jordan informed Frasca that it had requested that its subbid be withdrawn. Frasca again submitted the subcontract and again Brandt-Jordan returned it unsigned. Subsequently the plaintiff and Frasca selected M. J. Flaherty, who had submitted a subbid of $298,704, as the heating and ventilating subcontractor. The Allied Heating Co. (Allied) which had submitted a subbid of $291,800 was not selected because Frasca "doubted the ability of Allied to get the work done." Neither the plaintiff nor its architect made any independent investigation of the competency or responsibility of Allied.

1. General Laws c. 149, § 44B (3), as amended through St. 1961, c. 604, § 2, provides in pertinent part that "if a selected sub-bidder fails to perform his agreement to execute a subcontract . . . the bid deposit of such sub-bidder shall become and be the property of the . . . governmental unit . . . to which it is payable, as liquidated damages; provided that, the amount of the bid deposit which becomes the property of the . . . governmental unit . . . shall not, in any event, exceed the difference between his sub-bid price and the sub-bid price of the next lowest responsible and eligible sub-bidder; and provided further that, in case of death, disability, bona fide clerical or mechanical error of a substantial nature, or other unforeseen circumstances affecting any such sub-bidder, his bid deposit shall be returned to him."

It is the "general and familiar rule" that a statute is interpreted "according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection

to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Hanlon* v. *Rollins*, 286 Mass. 444, 447. See also G. L. c. 4, § 6. We are of opinion that in § 44B the Legislature intended the term "clerical or mechanical error" to be limited to errors of copying, transference or transcription, including mistakes of arithmetical computation, which occur during the final stages of bid preparation. This is the "ordinary and approved usage" of the term. In addition, the Legislature did not enact a general "unilateral mistake" provision, but rather responded to a specific mischief. The "main object to be accomplished" was to relieve contractors of the financial hardship resulting from the inevitable errors which occur during the hurried, last minute calculations and compilations required by competitive bidding.

Brandt-Jordan's mistake was not such an error. It was not an error of copying, transferring or transcribing. It did not involve arithmetical computation. It did not occur during the final stages of its bid preparation. Neubert simply forgot to prepare a figure for the work required to be performed as shown on the drawing HV–1.

2. We do not think that Brandt-Jordan's mistake was an unforeseen circumstance as the term is used in § 44B. Prior to the 1961 amendment the section provided that "in case of death, disability or other unforeseen circumstances affecting any . . . sub-bidder" the bid deposit might be returned. G. L. c. 149, § 44B, as amended through St. 1960, c. 771, § 2. It seems to us that prior to the 1961 amendment the term was clearly intended to be limited to circumstances such as death or disability which occur after the bid has been submitted. We do not believe that, by the juxtaposition of the "bona fide clerical or mechanical error" clause before it, the Legislature intended to expand the term to include a mistake of the kind involved in the instant case.

3. General Laws c. 149, § 44I (3), as amended by St. 1960, c. 771, § 7, provides in pertinent part that "[i]f a selected sub-bidder fails . . . to execute a subcontract . . . [the] general bidder and the awarding authority shall select,

from the other sub-bids . . . the lowest responsible and eligible sub-bidder at the amount named in his sub-bid . . . against whose standing and ability the general contractor makes no objection . . . ." Here, the general contractor made such an objection to Allied. We are of opinion that it had a right to do so. However, it cannot do so at the expense of the defendants. General Laws c. 149, § 44B, as amended through St. 1961, c. 604, § 2, specifically limits the defendants' penalty to "the difference between . . . [Brandt-Jordan's] price and the sub-bid price of the next lowest responsible and eligible sub-bidder." There was no evidence that Allied was not a "responsible and eligible sub-bidder." The plaintiff is entitled to recover only the difference between Brandt-Jordan's subbid and that of Allied.[2]

*Exceptions sustained.*