ROBLIN HOPE INDUSTRIES, INC. *vs.* J. A. SULLIVAN
CORPORATION.

Suffolk.   February 15, 1978. — July 12, 1978.

Present: KEVILLE, GRANT, & BROWN, JJ.

*Public Works. Contract,* Public works, Bidding for contract, Subcontract. *Damages,* Failure to award public works contract.

A general contractor did not have the right under G. L. c. 149, § 44F, to reject a substitute subbidder proposed by the awarding authority by merely objecting to the subbidder's "standing and ability" without giving any reasons therefor. [485–489]

Where a general contractor acted wrongfully and in bad faith in rejecting a substitute subbidder proposed by the awarding authority under the provisions of G. L. c. 149, § 44F, the subbidder was entitled to damages in the amount of its anticipated profits. [489–491]

CIVIL ACTION commenced in the Superior Court on April 11, 1975.

The case was heard by *Hallisey,* J., on a master's report.

*Peter J. Gagne (Joseph M. Corwin* with him) for the plaintiff.

*Victor Brogna* for the defendant.

*Leo S. McNamara,* Assistant Attorney General, for the Commonwealth, amicus curiae.

*James F. Grosso,* for Associated General Contractors of Massachusetts, Inc., amicus curiae, submitted a brief.

BROWN, J. Roblin Hope Industries, Inc. (Hope), brought an action against the Bureau of Building Construction (BBC), The William Bayley Company (Bayley), and J. A. Sullivan Corporation (Sullivan), the general contractor for construction of a classroom building at Southeastern Massachusetts University, claiming that Sullivan's rejection of it as subcontractor for metal windows in favor of Bayley was in violation of G. L. c. 149, §§ 44A–44L.

Under G. L. c. 149, §§ 44C and 44F, each general bid must contain a list of subbids for specified types of work. Sullivan in its general bid listed itself as subbidder for the metal window work. Bayley, on February 3, 1975, protested to the BBC that Sullivan did not customarily install metal windows with its own personnel. BBC pursuant to G. L. c. 149, § 44F, as amended by St. 1961, c. 604, § 5, under which "the awarding authority may substitute for any sub-bid listed . . . a sub-bid duly filed with the awarding authority by another subbidder . . . against whose standing and ability the [contractor] makes no objection" then wrote Sullivan, requesting that it substitute Hope, the lowest subbidder, as subcontractor. Sullivan replied that because it wished to use its own labor force to install the windows to permit "stringent control and supervision" and greater efficiency, it therefore objected to the "standing and ability" of Hope.

After a hearing, BBC rejected Sullivan's subbid for the metal window work under G. L. c. 149, § 44J, as appearing in St. 1956, c. 679, § 1,[1] because Sullivan failed to demonstrate to the satisfaction of BBC that it customarily performed such work. BBC again requested Sullivan to substitute the lowest subbidder, pursuant to G. L. c. 149, §§ 44F and 44I(2), the latter as amended through St. 1967, c. 884.[2] Sullivan again refused to accept either Hope or

---

[1] General Laws c. 149, § 44J, as so appearing, reads in relevant part: "If a general bidder customarily performs with his own employees any sub-trade or sub-trades listed in Item 2 of the general bid form, he may submit a sub-bid on the sub-bid form prescribed by section forty-four G, and shall also submit under Item 2 of his general bid his name and amount for such sub-trade. . . . No such sub-bid by a general bidder shall be considered, however, unless the general bidder can show, to the satisfaction of the awarding authority, that he does customarily perform such sub-trade, and is qualified to do the character of work required by the applicable section of the specifications."

[2] General Laws c. 149, § 44I(2), as so amended, reads in relevant part: "If, after the selection of the lowest responsible and eligible general bidder, it be decided to consider sub-bidders other than the ones named by such general bidder in his general bid, the awarding authority and such general bidder shall jointly consider all filed sub-

the second lowest subbidder, Boston Screen and Sash Company, asserting that it is "the inherent right under the Mass. Public Bidding Law for a General Contractor to form his own team" and that "as the General Contractor we are responsible for the complete work as specified." Sullivan selected Bayley, whose bid was some $31,000 higher than the lowest subbid.[3]

At trial a Superior Court judge found that the objections which were offered by Sullivan to Hope were "specious" and "first seized on by Sullivan after institution of this suit in an attempt to justify its refusal of plaintiff." Rejecting Sullivan's argument that the statute permits a general contractor to reject a subbidder to whom it objects without giving any reason, the judge then held that "an objection to standing and ability which is in reality no more than a recitation of the words of the statute" is not sufficient under §§ 44F and 44I(2) to justify the exclusion of a lower subbidder from the general contract. The judge awarded Hope damages in the amount of the cost of preparing the bid and dismissed the action as against BBC and Bayley. Both Sullivan and Hope appealed from the ensuing judgment.

Sullivan contends that under the decisions in *East Side Constr. Co.* v. *Adams*, 329 Mass. 347, 354 (1952), *Rudolph* v. *City Manager of Cambridge*, 341 Mass. 31, 39 (1960), and *Interstate Engr. Corp.* v. *Fitchburg*, 367 Mass. 751, 762 (1975), a selected general bidder has the right to reject a subbidder merely on the basis that the subbidder is "unacceptable" to it, without ascribing any reasons. Sullivan further argues in support of this position that

bids not rejected under section forty-four H. Any agreement to substitute a sub-bid for the one named in the selected general bid shall result in an adjustment of the general bid price by the difference between the amount of the sub-bid originally named and the amount of the sub-bid substituted therefor."

[3] There was an adjustment for this higher amount, but Sullivan's general bid was nevertheless lower than the next lowest general bid. See G. L. c. 149, § 44I(2).

§ 44I(2) provides that the awarding authority and the general bidder selected shall "jointly consider" filed sub-bids and refers to "[a]ny agreement to substitute a sub-bid."[4]

In *East Side Constr. Co.* v. *Adams, supra,* the Supreme Judicial Court held that the award of a contract to a general bidder was in violation of the bidding statute because the general bidder had failed to submit a subbid for demolition work as required by the statute. One of the plaintiffs, East Side Construction Company, Inc., the lowest qualified subbidder for the demolition work, argued that its bid should have been accepted. The court rejected this claim for the reason that "there is no statutory requirement that in every case the lowest subbid must be accepted" and further that "[w]hen accepted, a subbidder enters into no contractual relation with the town, but becomes bound to the general contractor." 329 Mass. at 353. In contrast to that case, in the case at bar the awarding authority had asked the selected general bidder to

---

[4] The Superior Court judge applied G. L. c. 149, § 44I(2), in deciding this case. Sullivan also cites this section. Hope cites c. 149, § 44I(3) as applying to this situation, relying on *Paul Sardella Constr. Co.* v. *Braintree Housing Authy.,* 371 Mass. 235, 242–243 (1976). Section 44I(3) applies where a subbidder fails to execute a contract with the general contractor. Section 44H also makes § 44I(3) applicable when a subbid listed by a general contractor is invalid. In *Sardella, supra,* the Supreme Judicial Court held that § 44I(3) was applicable where a subbidder, because of an error in its bid, failed to execute a contract with the general contractor. The court stated further that the word "invalid" in § 44H "is to be read as expressing a broad legislative intent to classify as invalid any subbid which disappeared in circumstances like those in the instant case." *Ibid.*

Sullivan's subbid was not rejected because it was invalid and did not "disappear in circumstances like those in [Sardella]." Rather, this case is more analogous to the rejection of a subbid on the basis of incompetency, which the Supreme Judicial Court in *Rudolph* v. *City Manager of Cambridge,* 341 Mass. at 36–37, placed under § 44I(2). In any event, whether § 44F and § 44I(2) (which are to be read in conjunction) apply or whether § 44I(3) applies, the issue to be decided in this case is the same, as both § 44F and § 44I(3) contain the language "against whose standing and ability [the selected general bidder] makes no objection."

accept the plaintiff's bid, in accordance with the statutory procedure set out in §§ 44F and 44I(2). The question here, unlike that in *East Side Constr. Co.*, is whether the selected general bidder had grounds under the statute to refuse to accept the subbidder proposed by the awarding authority.

Similarly, in *Interstate Engr. Corp.* v. *Fitchburg, supra*, the Supreme Judicial Court refused to order a contract awarded to a subbidder because the statutory procedure had not yet been followed and the selected general bidder had not had an opportunity to object to the subbidder.

In the other case relied on by Sullivan, *Rudolph* v. *City Manager of Cambridge, supra*, the Supreme Judicial Court, in describing the procedure followed in substituting subbidders, stated that "substitution of a subbidder . . . can occur only after the acceptability of another subbidder to the general bidder has been ascertained. See *Poorvu Constr. Co.* v. *Nelson Elec. Co.*, 335 Mass. 545, 548 [1957]." 341 Mass. at 37. The case cited states in pertinent part that "the general contractor is not to be required to employ . . . any subcontractor . . . against whose standing and ability the general contractor makes objection." 335 Mass. at 548. Thus, the language in the *Rudolph* case as to "acceptability" was merely a rephrasing of the statutory provision for objections to "standing and ability;" it was not a holding as to the meaning of that phrase.

In short, while these cases establish that the lowest eligible subbidder has no right to be selected, they do not decide on what basis the selected general bidder may refuse to accept a subbidder whose substitution is requested by the awarding authority under §§ 44F and 44I(2).

To accept Sullivan's argument here that it has an absolute right to reject a lower subbidder without giving any reason for doing so, and may do so conclusively merely by reciting the statutory language, would be to give no meaning to the statutory language "standing and ability." G. L. c. 149, § 44F. Sullivan's meaning could be encap-

sulated merely in the phrase "against [whom the selected general bidder] makes no objection," without the words "standing and ability." A statute should be interpreted so as to give meaning to all the words in context; none of the words should be regarded as superfluous. *Commonwealth v. Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.*, 352 Mass. 617, 618 (1967). *School Comm. of Stoughton* v. *Labor Relations Commn.*, 4 Mass. App. Ct. 262, 270–271 (1976). Furthermore, the statute must be construed in "light of the legislative objectives which were served by its enactment so as to effectuate the purpose of the framers." *Interstate Engr. Corp.* v. *Fitchburg*, 367 Mass. at 757. One of these purposes is to "obtain the lowest price . . . that competition among responsible bidders can secure." *Ibid.* See *Mari & Sons Flooring Co.* v. *Southeastern Mass. Univ. Bldg. Authy.*, 3 Mass. App. Ct. 580, 581–582, 585 (1975). In *Rudolph* v. *City Manager of Cambridge, supra*, the Supreme Judicial Court held that the rejection by an awarding authority of the lower subbid of a competent and eligible bidder in favor of a higher subbidder was contrary to the intent of the statute and therefore invalid. The Supreme Judicial Court described the fiscal policy behind the statute thus: "Section 44I(2) . . . stands as consistent with the other express provisions of the statute and with the strongly implied policy of the statute to allow rejection of subbids of competent acceptable and available subbidders if they are not the lowest such bids. It is a useful and reasonably necessary provision to implement the policy of the statute. Under it the contracting public body is assured of the opportunity of requiring that the work be done by a competent general contractor using competent subcontractors who are acceptable to him and willing to work for him at the lowest price which all bids filed will permit." 341 Mass. at 38. Thus, the overriding fiscal policy behind the statute indicates that the interpretation urged by Sullivan that a selected general bidder may arbitrarily reject a subbidder requested by the awarding authority by merely reciting

the statutory language of objection to standing and ability, without giving meaning to the phrase, would be contrary to the intent of the statute. This is especially evident in the situation here, where the subbid listed by the selected general bidder had been rejected, the selected general bidder knew the price spread between the general bids, and, because there was sufficient difference between its bid and the next lowest general bid, the selected general bidder had no incentive to select the lowest subbid. It may also be noted that constraints were imposed on the awarding authority in *Rudolph*, largely because of the fiscal policy underlying the statute even in the absence of specific language in § 44I(2); it is therefore even more apparent that the express limitations imposed by the statute on the selected general bidder's ability to reject lower subbidders should not be interpreted out of the statutory language here.

Sullivan's argument pointing to the provisions of § 44I(2) that the selected general bidder and the awarding authority are to "jointly consider" and reach "agreement" on subbids, and to the selected general bidder's responsibility for the work, has merit. However, the answer to that argument is that the statute appears to attempt to balance two considerations — the interest in obtaining the lowest cost to the Commonwealth and the interest in ensuring that the contractor can carry out the job harmoniously and responsibly — by providing that the awarding authority may substitute a subbidder and, recognizing the responsibility of a general contractor, that the selected general bidder may refuse to accept the substitution if it objects to the standing and ability of the proposed subcontractor. To permit the awarding authority to substitute regardless of the selected general bidder's objections would be to risk creating a situation where the work would not be done responsibly; but to permit the selected general bidder to object arbitrarily to a lower subbidder would be to fail to provide any means to ensure that the public obtains the lowest possible price for a job responsibly done.

The Attorney General, in an amicus brief, argues that to require a selected general bidder to give reasons for refusing to substitute a subbidder would lead to the difficulty of determining whether the general bidder's reasons were well grounded, and could eventually cause friction between the general contractor and the subcontractor during the construction phase if the charges could not be proved.[5] The Attorney General further points out that compelling a selected general bidder to ground his objections on the reputation or competency of the proposed substitute subbidder would lead to a contradiction within the statute, as §§ 44F and 44I(1) & (3) require the general contractor to object to the standing and ability of the lowest "responsible and eligible" subbidder. Thus, presumably, the awarding authority has already determined the competency of the subbidders.

However, the general bidder who has been selected may have information which the awarding authority does not have. Further, we need not decide whether the two standards "responsible and eligible" and "standing and ability" are the same, or that the awarding authority must make an independent investigation of the "standing and ability" of the subbidder following an objection thereto by the selected general bidder. See *Lincoln-Sudbury Regional Sch. Dist.* v. *Brandt Jordan Corp.*, 356 Mass. 114, 117 (1969). What is clear is that the general bidder's objection cannot be based on mere whim or caprice or no reason at all.

In summary, a selected general bidder may reject a substitute subbidder proposed by the awarding authority if the general bidder in fact has objections to the subbidder on the grounds of standing and ability. The term

---

[5] *Modern Continental Constr. Co.* v. *Massachusetts Port Authy.*, 369 Mass. 825 (1976), cited by the Attorney General, is inapposite. That case held that it was within the discretion of the awarding authority to reject bids under G. L. c. 30, § 39M, because of labor disharmony. *Id.* at 829. Here the awarding authority is proposing acceptance of a bid.

"standing and ability" is not a meaningless phrase. We reject Sullivan's argument that a selected general bidder has a absolute right to sustain its rejection of a subbidder proposed by the awarding authority merely by a pro forma recitation of the words of the statute.

Thus, in the present case whether or not the general bidder's objection is actually on the basis of standing and ability is a question of fact to be decided on all the evidence. Sullivan has failed to show that it was so based. Although Sullivan introduced evidence in support of its objection, the judge found that the reasons ascribed by Sullivan for its objection to Hope were "specious." Sullivan has not contested this finding on appeal, and we do not conclude that that finding was clearly erroneous. See *Sanguinetti* v. *Nantucket Constr. Co.* 5 Mass. App. Ct. 227, 228 (1977). See also Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974).

Hope argues on its appeal that it should be awarded as damages the amount of its anticipated profits, rather than the cost of bid preparation, the damages awarded below.

In *Paul Sardella Constr. Co.* v. *Braintree Housing Authy.*, 3 Mass. App. Ct. 326 (1975), *S.C.* 371 Mass. 235 (1976), where an awarding authority had made a good faith mistake in interpreting the bidding law, this court held that the proper measure of recovery was the reasonable cost of preparing the bid, on the theory that it is an implied condition of every invitation for bids issued by a public contracting authority that each bid submitted will be fairly considered in accordance with all applicable statutes, and that a failure to give such consideration is a breach of "the implied contract formed by the submission of such a bid." 3 Mass. App. Ct. at 333–335. The Supreme Judicial Court agreed that this was the proper measure of damages. 371 Mass. at 243. The question of the proper measure of damages in the event of bad faith by a public awarding authority was left open. 3 Mass. App. Ct. at 334–335.

Here the defendant against whom damages are being awarded is a private contractor, not a public awarding authority; hence the theory of an implied contract in connection with the invitation to bid (compare *id.* at 333–334) does not apply. However, the public interest requires that damages be awarded to ensure that the public bidding laws are complied with, as failure to ensure that all bids are treated fairly could result in fewer bids being submitted for public contracts. See *Paul Sardella Constr. Co.* v. *Braintree Housing Authy.*, 3 Mass. App. Ct. at 334. Moreover, the purposes of this statute are to protect the public and to ensure fair treatment for the bidders, as the title of the statute, "FAIR COMPETITION FOR BIDDERS ON CONSTRUCTION, ETC., OF PUBLIC WORKS," implies. G. L. c. 149, §§ 44A-44L. *Interstate Engr. Corp.* v. *Fitchburg*, 367 Mass. at 757–758 & n.11. *Paul Sardella Constr. Co.* v. *Braintree Housing Authy.*, 3 Mass. App. Ct. at 332–333.

In the case of a public agency acting in good faith, the payment of bid preparation costs as damages is sufficient sanction to ensure compliance with the bidding laws. In a case such as this, however, where a private contractor is involved and the general contract price has been adjusted upward by a much greater amount than the bid preparation costs, and there is no way to ensure that this entire increase in the contract amount will go to the subcontractor,[6] an award of damages in the amount of the plaintiff's anticipated profits is required as a deterrent to ensure good faith compliance with the bidding statute. We note also that other courts have pointed out that damages in the amount of the cost of bid preparation are not adequate compensation for a plaintiff's loss in certain situations. See *General Elec. Co.* v. *Seamans*, 340 F. Supp. 636, 640 (D.D.C. 1972); *Ainslie Corp.* v. *Middendorf*, 381 F. Supp. 305, 307 (D. Mass. 1974).[7]

---

[6] It is to be noted that there has been no showing here that the selected general bidder retained any part of the increase.

[7] See also discussion in Pierson, Standing to Seek Judicial Review of Government Contract Awards: Its Origins, Rationale and Effect on

Finally, the instant case is distinguishable from all the cases cited by Sullivan and from those collected in *Paul Sardella Constr. Co.* v. *Braintree Housing Authy.*, 3 Mass. App. Ct. at 333–334, because the trial judge specifically found that Sullivan's objection to Hope "was not in good faith, ... but was a stubborn insistence, in the first instance, on using its own people, or somewhat vindictively, when not allowed to so do, to select the highest of all the metal window subbidders."[8]

Therefore, in light of the facts that (1) the defendant is a private contractor rather than a public agency, (2) the plaintiff would have received the contract[9] but for the bad faith objection of the defendant, and (3) there is a need for an effective deterrent to ensure that general contractors will comply with the bidding statute, we conclude that in these circumstances the judgment should be modified to award damages in the amount of Hope's anticipated profits.

The judgment in so far as it awards damages to Hope is reversed, and the case is remanded to the Superior Court for a redetermination of the damages to be awarded to Hope from Sullivan in accordance with the principles set forth in this opinion.

*So ordered.*

---

the Procurement Process, 12 B.C. Ind. & Comm. L. Rev. 1, 44–49 (1970), and Comment, Government Contract Bid Protests: Judicial Review and the Role of the Court of Claims, 39 U. Chi. L. Rev. 814, 833–835 (1972).

[8] Sullivan does not contest this finding, although it does argue that the judge did not make a finding of "sinister motives" and that what was in fact involved was a misinterpretation of the statute.

[9] Hope argues that it is entitled to anticipated profits because the execution of the contract was a mere formality to memorialize obligations which were already fixed. However, as in *Sardella*, a contract was never actually formed, and thus Hope is not entitled to damages under such a contract. See 3 Mass. App. Ct. at 331–332. But see *Southern Cal. Acoustics Co.* v. *C. V. Holder, Inc.*, 71 Cal.2d 719, 726-727 (1969) (Traynor, C.J.).