ROBLIN HOPE INDUSTRIES, INC. *vs.* J. A. SULLIVAN CORPORATION (No. 2).

Suffolk. November 3, 1980. — December 23, 1980.

Present: GRANT, CUTTER, & GREANEY, JJ.

*Public Works. Contract,* Public works, Bidding for contract, Subcontract. *Damages,* Failure to award public works contract.

In a proceeding to determine the amount of damages to be awarded to a subcontractor for the loss of its anticipated profit on a subcontract of which it had been wrongfully deprived by a general contractor, findings were warranted that the subcontractor's overhead expenses were fixed and would not have increased had the subcontract been performed and, therefore, were not to be considered in determining the anticipated profit. [78-80]

In an action against a general contractor for failing to award the plaintiff a subcontract in violation of the public bidding statute, an award of damages which amounted to approximately 35% of the amount of the subcontract bid and represented the subcontractor's anticipated profit on the subcontract was not in excess of what the defendant could reasonably have foreseen as the natural and probable consequence of its conduct. [80-81]

CIVIL ACTION commenced in the Superior Court on April 11, 1975.

After review by this court reported at 6 Mass. App. Ct. 481 (1978) a proceeding to redetermine damages was heard by *Connolly,* J.

*Victor Brogna* for the defendant.

*Peter J. Gagne* for the plaintiff.

CUTTER, J.[1] This case is before this court for the second time. See *Roblin Hope Indus., Inc.* v. *J.A. Sullivan Corp.,*

---

[1] Recalled retired Justice of the Supreme Judicial Court sitting by designation.

6 Mass. App. Ct. 481 (1978) (hereafter the 1978 decision). There it was decided that the plaintiff (Hope's) had been deprived (in violation of G. L. c. 149, §§ 44A to 44L) by J. A. Sullivan Corporation (Sullivan) of the opportunity to provide, as subcontractor through its Hope's Windows division, the metal windows for a classroom building being constructed by the Commonwealth at Southeastern Massachusetts University. Sullivan had been selected as the general contractor on the project. In the 1978 decision, it was determined that Sullivan was liable to Hope's for its loss of the anticipated profits in performing the subcontract and not merely for $1,000, the cost of preparation of Hope's subbid. The case was remanded to the Superior Court for a new determination of the damages to Hope's. No question of liability is before us but only the issue of the amount of damages.

1. At trial, it appeared that Hope's, for performance of the subcontract of which it had been deprived, would have received its bid price, $158,758. A witness called by Hope's testified that the direct costs which Hope's would have been obliged to incur in 1975 in performing the contract would have been $101,910. These direct costs were determined retroactively in 1979 by the witness (who had prepared in 1975 a pricing estimate[2] for use in making the subbid). In 1979, he ascertained the 1975 cost of all materials used in manufacturing and finishing the windows, and the 1975 labor costs of making, erecting, transporting, and installing the windows. He included in the direct cost figure of $101,910, all variable overhead costs, such as overtime, vacation and holiday pay, payroll taxes, group insurance,

---

[2] The witness's 1975 estimate was based on applying, to quantities of materials and labor required, the figures contained in a company-prepared book used in computing prices. These figures were not confined to costs but included various other allowances. The estimate of selling price thus computed by the pricing book came to $183,842, which was later reduced to $158,758 by superiors of the witness, as a matter of their judgment, perhaps to meet competition. The trial judge, in his decision, in effect treated this pricing estimate, not solely related to cost, as irrelevant.

workmen's compensation, pensions, tools, truck and utility expense, and union-required contributions related to the performance of such a subcontract. On the evidence, the profit reasonably to be anticipated by Hope's, if it had been awarded and had performed the subcontract, was computed as $158,758 (the Hope's subbid) less $101,910 (the estimate of costs), or $56,848.

2. In the 1979 cost computation of $101,910, no amount was included for fixed overhead, i.e., "overhead [cost] items that go on in the factory whether or not you get a specific job," such as the compensation of salaried employees, depreciation, and real estate taxes. Such "ongoing" costs, so an accountant in charge of "costing jobs" for Hope's testified, would not have been increased or decreased if Hope's had been awarded the subcontract. There was testimony that Hope's in 1975 had the material, labor, and plant capacity to handle the subcontract if it had been awarded it. All the witnesses were present or former employees of Hope's and their examination and cross-examination produced no evidence requiring a finding that the performance of the subcontract would have had any effect on the amount of Hope's fixed overhead. Sullivan called no independent cost accountant or other expert to testify concerning usual business and accounting practice in allocating fixed overhead to a lost opportunity to perform a subcontract (in addition to a large volume of other business) in a situation such as that now before the court.[3]

3. On the testimony summarized above, the trial judge was well justified in finding, as he did, "that the overhead expenses of . . . [Hope's] were fixed and would not have increased if . . . [Hope's] had been awarded the . . . subcon-

---

[3] We thus need not consider what different considerations might apply if there had been introduction by Sullivan of persuasive and intelligible expert testimony concerning more sophisticated general cost accounting and usual business practices in the allocation of fixed overhead costs in situations such as that here presented. Compare *Air Technology Corp.* v. *General Elec. Co.*, 347 Mass. 613, 628 n.18 (1964); *Coyne Industrial Laundry of Schenectady, Inc.* v. *Gould*, 359 Mass. 269, 276-277 (1971).

11 Mass. App. Ct. 76                    79

Roblin Hope Industries, Inc. v. J. A. Sullivan Corp. (No. 2).

tract and had performed" it. In the light of this explicit finding, he correctly ruled that Hope's fixed overhead expenses "are not to be considered . . . in determining the anticipated profit of" Hope's.

The most nearly controlling Massachusetts decision is *F.A. Bartlett Tree Expert Co.* v. *Hartney*, 308 Mass. 407, 409-410 (1941), where there was a specific master's finding that overhead of the plaintiff would not have been materially decreased by the loss of orders to which it was entitled or materially increased if the plaintiff had executed those orders. See *Flower* v. *Billerica*, 320 Mass. 193, 196-197 (1946). The *Bartlett* case was distinguished, on the basis of the explicit master's finding in that case, in *Coyne Industrial Laundry of Schenectady, Inc.* v. *Gould*, 359 Mass. 269, 276-277 (1971). By his decision in our case the trial judge did not put Hope's in a better position than if it had received and performed the subcontract (cf. *Ficara* v. *Belleau*, 331 Mass. 80, 82 [1954]), but merely awarded Hope's what (so far as disclosed by the evidence) would have put Hope's "in as good a position as if" it had not been deprived wrongfully of the opportunity to perform the subcontract.[4] See *Concannon* v. *Galanti*, 348 Mass. 71, 74 (1964). The *Bartlett* case is supported by substantial authority. See *Vitex Mfg. Corp.* v. *Caribtex Corp.*, 377 F.2d 795, 797-799 (3d Cir. 1967); *Buono Sales, Inc.* v. *Chrysler Motors Corp.*, 449 F.2d 715, 719-720 (3d Cir.

[4] The present case is not governed by *Fillmore* v. *Johnson*, 221 Mass. 406, 410 (1915), where the plaintiff was seeking to recover its costs in "finishing" the output of its paper tissue factory, so that inclusion of various fixed overhead items would be necessary to reflect "actual cost," in a situation somewhat analogous to a cost-plus-a-fixed-fee contract. An allocation to "costs" of fixed overhead, however, is not appropriate when determining the loss of anticipated profits from a subcontract, the performance of which, on the evidence presented, would neither increase nor decrease fixed overhead. This case is governed by the simple principle of the *Bartlett* case. We do not consider any contention (made for the first time on appeal, so far as appears) that Hope's did not meet some special burden of proof with respect to fixed overhead, beyond the evidence produced by it at trial. See *Corkery* v. *Philbrook*, 6 Mass. App. Ct. 861 (1978).

1971); *Nederlandse Draadindustrie NDI B.V.* v. *Grand Pre-Stressed Corp.*, 466 F. Supp. 846, 854 (E.D.N.Y. 1979); Restatement (Second) of Contracts § 361, Comment d, at 33-34, and Illustration 11, at 36 (Tent. Draft No. 14, 1979); 5 Corbin, Contracts § 1038, at 239-240 (1964) (citing the *Bartlett* case).[5]  See also *Apex Metal Stamping Co.* v. *Alexander & Sawyer, Inc.*, 48 N.J. Super. 476, 483-487 (1958); Annot., 3 A.L.R. 3d 689, 705-709 (1965).  Compare *Partridge* v. *Norair Engr. Corp.*, 301 F.2d 247, 250-252 (D.C. Cir. 1962).

4.  Sullivan contends that, under usual principles limiting recovery of anticipated profits for breach of contract, a recovery of $56,848 was significantly above what Sullivan could have foreseen as the natural and probable consequence of wrongfully depriving Hope's of the subcontract. Under the 1978 decision of this court, 6 Mass. App. Ct. at 491, the award of anticipated profits was not exactly an award of damages for breach of contract but only a somewhat similar payment as a "deterrent to ensure that general contractors will comply with the bidding statute" (G. L. c. 149, §§ 44A - 44L).  The precedents, however, on award of anticipated profits as damages for breach of contract provide a useful analogy.  See *Bucholz* v. *Green Bros.*, 272 Mass. 49, 54 (1930); *Associated Perfumers, Inc.* v. *Andelman*, 316 Mass. 176, 185-186 (1944), holding that the "injured party shall be placed in the same position he would have been in, if the contract had been performed, so far as loss can be ascertained to have followed *as a natural consequence* and to have been *within the contemplation of the parties* as reasonable men *as a probable result of the breach*" (emphasis supplied).

5.  Sullivan suggests that no contractors knew until the 1978 decision of this court what would be the measure of damages in the event that a private general contractor

---

[5]See concerning a somewhat analogous problem under G. L. c. 106, § 2-708(2), *Jericho Sash & Door Co.* v. *Building Erectors, Inc.*, 362 Mass. 871, 872 (1972), and *Cesco Mfg. Corp.* v. *Norcross, Inc.*, 7 Mass. App. Ct. 837, 843 (1979).

should violate the public bidding statute in awarding sub-contracts. See *Paul Sardella Constr. Co.* v. *Braintree Housing Authy.*, 371 Mass. 235, 243 (1976). In that sense, recovery by Hope's of its lost anticipated profits probably was not within the contemplation of the parties.

The 1978 decision that Hope's is entitled to its anticipated profits we regard as having dealt sufficiently with all questions necessary to that decision, including the foreseeability of those profits as damages. See *Levenson* v. *Brockton Taunton Gas Co.*, 5 Mass. App. Ct. 883 (1977); *Blake* v. *Springfield St. Ry.*, 9 Mass. App. Ct. 912 (1980). See also *Bar Assn. of the City of Boston* v. *Casey*, 213 Mass. 549, 556 (1913); *Bacon* v. *George*, 216 Mass. 519, 520 (1914); Lummus, The "Law of the Case" in Massachusetts, 9 B.U.L. Rev. 225, 227-228 (1929); Note, 62 Harv. L. Rev. 286 (1948). In any event, we cannot say on this record, as matter of law, that on a subcontract the bid on which was $158,758, lost profits of $56,848 (or about 35 per cent) are in excess of what the parties reasonably should have foreseen. The failure to award the subcontract must be treated as essentially equivalent to a total breach or repudiation of the subcontract in determining what is the "natural" and "probable result" of that failure. See *Boylston Housing Corp.* v. *O'Toole*, 321 Mass. 538, 562 (1947), in general following *Hadley* v. *Baxendale*, 9 Exch. 341, 354-355 (1854).

*Judgment affirmed.*