## CHARLES R. LEE & others[1] vs. BOARD OF APPEALS OF HARWICH & others.[2]

Barnstable. January 24, 1980. — January 12, 1981.

Present: PERRETTA, ROSE, & KASS, JJ.

*Subdivision Control,* Zoning requirements, Endorsement. *Zoning,* Lot size, Exemption.

Endorsement of a plan under G. L. c. 41, § 81P, did not preclude a judicial inquiry into whether the lots depicted on the plan complied with the requirements of the zoning by-law. [151-152]

An amendment to a town's zoning by-law which exempted from certain dimensional requirements lots lawfully laid out by plan or deed which complied at the time of layout with applicable provisions of the by-law rendered buildable a lot shown on a plan endorsed under G. L. c. 41, § 81P, which had complied with the by-law requirements at the time of layout even though the plan, on its face, showed a lot with no frontage on any way and, therefore, depicted a subdivision and should not have been endorsed. [152-153]

On review of a judgment entered in an action challenging a decision of a town's board of appeals upholding issuance of a building permit for the construction of a single-family residence on a lot which did not comply with the dimensional requirements of the zoning by-law, this court considered an amendment to the by-law which rendered the lot buildable even though the amendment was not in effect at the time the action was commenced. [153-155]

CIVIL ACTION commenced in the Superior Court on March 28, 1978.

The case was heard by *Beaudreau, J.*

[1] Barbara Lee, Byard S. Clark, Charlotte Clark, Frances P. Huntington, Mary M. Thompson, Arjen R. Steegstra and Clodagh Steegstra.

[2] David Thyng, building commissioner of the town of Harwich, and John F. Pow and Eleanor M. Pow.

*James M. Falla,* Town Counsel, for the Board of Appeals of Harwich & another.

*John J. McQuade, Jr.,* for John F. Pow & another.

*Theodore L. Tillotson* for the plaintiffs.

Rose, J.  The defendants, Pow, owners of Lot 3 on Davis Lane in Harwichport (hereinafter referred to as "the property" or "lot 3"), the board of appeals of the town of Harwich and the building commissioner of the town of Harwich, appeal from the Superior Court's judgment in favor of the plaintiffs, owners of land abutting lot 3, reversing a decision of the board of appeals which upheld the issuance by the building commissioner of a building permit for the construction of a single-family residence on the property under the Harwich zoning by-law (hereinafter "the by-law") and The Zoning Act, G. L. c. 40A, as appearing in St. 1975, c. 808, § 3 (hereinafter "the Act").  In addition, the defendants Pow take exception to the judge's determination that certain amendments of the by-law which became effective April 6, 1978, after the commencement of the action, do not render the property buildable. We are in agreement with that position, and we reverse the judgment of the Superior Court.

On March 6, 1956, the planning board of Harwich, acting through its chairman, endorsed a plan on which lot 3 appeared "Approval under the subdivision control law is not required."[3]  The planning board purported to act under G. L. c. 41, § 81P, but erred because the plan, on its face, showed a lot (lot 2) with no frontage on any way and, therefore, depicted a subdivision.  G. L. c. 41, § 81L.  Lot 3, however, met the minimum frontage requirements.

Twenty years later, on July 16, 1976, the Pows acquired lot 3 by deed from David M. Davis, one of the lot owners when the 1956 plan was endorsed and recorded in the Barnstable registry of deeds.  At the time of recording, David M. Davis and Anne Hall Davis held all three lots in common ownership.  In 1956, the minimum lot size for single-family

---

[3] A portion of the plan accompanies this opinion as figure A.

FIGURE A

residence use was 7,500 square feet.  As lot 3 contained 11,978 square feet, it was in conformity with the minimum lot size requirements for a buildable lot at the time of recording in 1956.  In 1966, the town of Harwich amended its by-law to increase the minimum lot size to 15,000 square feet (with exceptions not here pertinent) and to 30,000 square feet in 1972.  The three lots remained in common ownership until 1968, when the Davises "checkerboarded" them.[4]

The question posed by the parties is whether the judge properly ruled that the building commissioner and, in turn, the board of appeals exceeded their respective authorities when they concluded that lot 3 is a "buildable lot" and issued a building permit for the construction of a single-family residence on that lot.  The resolution of that question requires consideration of the impact on lot 3 of the improperly endorsed plan and the applicability of certain "grandfather" provisions in the Act and the Harwich by-law.  The owners of lot 3 and the board of appeals urge that the facial defects in the 1956 plan should be ignored because G. L. c. 41, § 81P, as appearing in St. 1963, c. 363, § 1, provides that endorsements by the planning board under that section "shall be conclusive on all persons."  The defendants read too much into the phrase when they argue that it means that § 81P endorsements are impervious to judicial review.  The propriety of such endorsements is subject to judicial review. See *Bloom* v. *Planning Bd. of Brookline*, 346 Mass. 278, 283 (1963).  We will not lightly assume that the Legislature intended to insulate administrative action, often taken by

---

[4] The Davises conveyed lot 1 to Mrs. Davis, kept lot 2 in common ownership and conveyed lot 3 to Mr. Davis.  "Checkerboarding" is a device whereby an owner conveys title to lots in a subdivision to related persons in such a manner so that no adjoining lots are owned by the same person.  The purpose of this conveyancing maneuver is to retain for all lots in a subdivision certain immunities against future zoning changes and mandated changes in the subdivision plan (see, for example, G. L. c. 41, § 81W) which the zoning act reserves for the good faith buyer of a lot in a subdivision.  It is highly doubtful that sham conveyances to related parties accomplish the desired result.

a single individual, from correction, no matter how wrong or arbitrary the action may have been.

The defect in the 1956 plan as to lot 2 does not require that the division of the original parcel into smaller lots be seen as totally defective. While lot 2 lacked the requisite frontage under G. L. c. 41, § 81L, lot 3, on the face of the plan, was a lawful lot. An endorsement under G. L. c. 41, § 81P, however, does not obviate a separate inquiry into whether the lots depicted comply with the requirements of the by-law. Apart from the fact of adequate frontage of the newly created lots, an endorsement under § 81P does not address the question whether each new lot within the plan complies with the other dimensional requirements of the applicable zoning by-law. See *Smalley* v. *Planning Bd. of Harwich*, 10 Mass. App. Ct. 599, 603-604 (1980). An endorsement under § 81P does not mean that the lots within the endorsed plan are buildable lots.

At the time of the division of the parcel and recording of the plan in 1956, lot 3 satisfied the dimensional requirements of the zoning by-law then in effect. It continued to do so until 1966, when the minimum required lot size was increased to 15,000 square feet. The defendants concede that the exemption for nonconforming lots provided by G. L. c. 40A, § 5A, as appearing in St. 1961, c. 435, § 1 (i.e., the "old zoning enabling act"), did not render this admittedly nonconforming lot buildable.[5] They argue, however, that the exemption provided by § 4B of the Harwich by-law extends the life of existing nonconforming lots.[6] While § 4B does not submit to easy interpretation, we are

---

[5] General Laws c. 40A, § 5A, as amended and in effect in 1972 provided that the statute "shall not be construed to prohibit a lot being built upon, if at the time of building, building upon such lot is not prohibited by the zoning ordinances or by-laws in effect in such city or town."

[6] "APPLICATION. Except as herein provided, or as specifically exempted by the Zoning Enabling Act, the provisions of this By-law shall apply to the erection, construction, reconstruction, alteration or use of buildings, structures or use and creation of lots. As provided herein existing uses, structures or lots may continue as non-conforming, 'Provided

inclined to agree with the construction which the defendants urge. What is unclear under the by-law is whether § 4B was meant to apply to existing lots of record or lots which were lawful under the by-law at the time § 4B was adopted in 1972. Under the latter interpretation, lot 3 would not be a buildable lot because it did not meet the minimum lot size requirements in 1972. Indeed, under the lot combination provisions of G. L. c. 40A, § 5A (as amended and in effect in 1972), requiring that when adjacent undersized lots are owned in common such lots must be combined, the three lots on the plan may not have qualified as separate lots in 1966, when the minimum lot size requirement was increased to 15,000 square feet. We view the 1968 "checkerboarding" as a transparently ineffective attempt to defeat the lot combination provisions. Section 4B of the 1972 by-law, however, expressly provided that the lot combination provisions of G. L. c. 40A, § 5A, should not apply to plans endorsed under G. L. c. 41, § 81P.

In 1978, the town amended § 4B, clarifying its application. As amended, the section reads in pertinent part: "Existing lots lawfully laid out by plan or deed which complied at the time of layout with applicable provisions of Zoning By-Laws, if any, may be built upon for single-family residential purposes provided" that the lots meet certain area, frontage and setback requirements. Since lot 3 complied at the time of the layout with the 1956 by-law and satisfies the area, frontage and setback requirements of the 1978 amendment to § 4B, lot 3 is a buildable lot.

Although the 1978 amendment of § 4B was not in effect when the plaintiffs commenced this action, it is appropriate

however, the lot combination provisions set forth in Chapter 40A, Section 5A, shall apply to any subdivision plan whether processed under the Subdivision Control Law or created prior to the adoption of subdivision control unless prior to the expiration of the protective period set forth in said Chapter 40A, Section 5A, the roads shown on such plan have been installed in accordance with the Planning Board requirements and a release of the road covenant or release of other security has been obtained from the Planning Board. Said lot combination provisions shall not apply to any "approval not required" plan.'"

that we consider the by-law in effect at the time we render our decision. *Bradley* v. *School Bd. of Richmond*, 416 U.S. 696, 711-716 (1974). This is particularly appropriate where, as here, a request for declaratory judgment on the effect of the amendment of the by-law is involved. *Massachusetts Outdoor Advertising Council* v. *Outdoor Advertising Bd.*, 9 Mass. App. Ct. 775, 776 (1980).

Both the 1972 § 4B and the 1978 amended § 4B evince an intent on the part of the inhabitants of Harwich to "grandfather" undersized lots lawfully recorded. We do not question the wisdom of the town's zoning enactments. Cf. *Sorenti* v. *Board of Appeals of Wellesley*, 345 Mass. 348 (1963); *Berliner* v. *Feldman*, 363 Mass. 767 (1973). While it is generally the policy of zoning by-laws to freeze and minimize substandard lots, *Giovannucci* v. *Board of Appeals of Plainville*, 4 Mass. App. Ct. 239, 242 (1976), this policy does not vitiate the authority of municipalities to preserve legislatively certain substandard lots for building purposes.

The plaintiffs contend that this result ignores the impact of § 4A of the by-law. Section 4A provides that whenever the zoning regulations differ from those prescribed by any statute, by-law, or other regulation, the stricter standard shall apply. The plaintiffs contend that since the exemption provided by § 5A of the old act was more limited than the exemption provided by § 4B of the by-law, the provisions of § 5A apply. So to read § 4A would render § 4B superfluous because one cannot envision circumstances under which the grandfather provisions of § 4B would ever be applied. Such a reading violates the well established rule of statutory construction that "none of the words [of the statute or by-law] should be regarded as superfluous." *Roblin Hope Indus., Inc.* v. *J.A. Sullivan Corp.*, 6 Mass. App. Ct. 481, 486 (1978), quoting from *Commonwealth* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.*, 352 Mass. 617, 618 (1967). Statutes are to be construed so as to harmonize superficially discordant provisions. *Board of Educ.* v. *Assessor of Worcester*, 368 Mass. 511, 513-514 (1975).

See also *Labor Relations Commn.* v. *Selectmen of Dracut,* 374 Mass. 619 (1978).

The judgment of the Superior Court is reversed, and judgment is to be entered stating that the board of appeals did not exceed its authority when it upheld the issuance of the building permit.

*So ordered.*