Muse, Christopher J., A.J.
On October 31, 1975, the plaintiff, Madeline McKenna, purchased property located at 48 Antlers Shore Drive, East Falmouth. The property consisted of two lots, Lot 180 and Lot 181.[2] Both Lots 180 and 181 are 8,000 square feet and have eighty feet of frontage. They were created by a plan recorded in 1926.
At the time of the purchase there were several structures on the properly: (1) a single-family dwelling unit located entirely on Lot 180; (2) a garage which straddles the lot line between Lots 180 and 181;[3] (3) a driveway running from the garage to the street that straddles the lot line; and (4) a shed that extends approximately one foot onto Lot 181.[4] As no survey was conducted at the time of purchase, McKenna was, and remained until recently, unaware of the intrusions onto Lot 181. The balance of Lot 181 remains undeveloped and unused. Since 1979, the two lots have been assessed as one.
In September 1979, McKenna received a building permit to enlarge the existing residential structure on Lot 180. The plan accompanying her application shows the residential structure and the existing garage and shed on Lot 180.[5]
On June 10, 2004, McKenna, through her attorney, requested a determination from the Building Commissioner as to whether Lot 181 was buildable.[6] On June 15, 2004, the Building Commissioner issued a decision stating that Lots 180 and 181 were a single lot. On June 25, 2005, McKenna, again through her attorney, appealed the Building Commissioner’s decision. Following a public hearing, on September 1, 2004, the • Board of Appeals affirmed the Building Commissioner’s decision. The Board’s basis for affirming the decision was the change in assessment in 1979, the existence of the encroaching garage, and the use of the garage for the benefit of Lot 180 for over thirty years. Because of these factors, the Board held that section 240-66C(4) of the Falmouth bylaws was inapplicable.
*731 The present appeal was filed on September 17, 2004. On August 16, 2006, this court held a trial to review the Board’s decision. At trial McKenna asserted that the Board’s decision should be overturned based on Seltzer v. Bd. of Appeals of Orleans, 24 Mass.App.Ct. 521 (1987). The defendants argue that the construction of the garage and shed on portions of Lot 181 support a finding that the lots were merged.

DISCUSSION

Upon the implementation of increased zoning dimensional requirements, adjoining lots held in common ownership are generally deemed merged to satisfy the new requirements. See Seltzer, 24 Mass.App.Ct. at 522 (explaining that “adjacent lots in common ownership will normally be treated as a single lot for zoning purposes so as to minimize non-conformities with the dimensional requirements of the zoning by-law or ordinance”); see also Vetter v. Zoning Bd. Of Appeal of Attleboro, 330 Mass. 628, 630 (1953) (holding non-grandfathered undersized vacant lot adjoined to land in common ownership could not be separately built upon). However, pursuant to G.L.c. 40A, §6, 14, and certain more-indulgent local bylaws, single and two-family residential lots may qualify for exemption from zoning ordinances or bylaws that increase area, frontage, width, yard, or depth requirements. G.L.c. 40A, §6, 14; Seltzer, 24 Mass.App.Ct. at 521-22 (1987); Lee v. Bd. of Appeals of Harwich, 11 Mass.App.Ct. 148, 154 (1981). Absent contrary actions by the property owners, these local bylaws effectively prevent the application of the merger doctrine to qualifying lots. See Seltzer, 24 Mass.App.Ct. at 524 (relying on local zoning bylaw providing for lot redrawing to prevent merger and allow development of the adjoining nonconforming lot); Lee, 11 Mass.App.Ct. at 154 (allowing development on substandard lot grandfathered under town bylaw); see also Preston v. Bd. of Appeals of Hull, 51 Mass.App.Ct. 236, 240 (2001) (noting cases relying on indulgent bylaws).
In the present case, section 240-66C(4) provides that “[a]ny lot held in common ownership with such adjoining lots as of 1 January 1981 may be treated as not held in common ownership if, as of 1 January 1981, a dwelling was in existence on all the other commonly held, contiguous lots, or if subsequent to 1 January 1981 the lot was no longer held in common ownership and a dwelling was permitted by special permit on each of such adjoining lots.” Therefore, as a dwelling was present on Lot 180 on January 1, 1981, and not on Lot 181, absent action by the owner and/or prior owners indicating merger, section 240-66C(4) prevents merger of Lots 180 and 181, and Lot 181 is separately buildable.
The crucial inquiry in determining merger is whether the lot retains a separate identity. Lindsay v. Bd. of Appeals of Milton, 362 Mass. 126, 131 (1972) (holding undersized lot held in common ownership with adjoining lot did not retain a separate identity because deed conveyed the two lots as one lot and the property had been jointly assessed as one lot). Factors examined in determining separate identify include: (1) the physical division of the lots by a fence or wall; (2) the location of structures on the lot(s); (3) the means in which the lot is assessed; and, (4) the description of the lots in the deed.[7] See e.g. Lindsay, 362 Mass. at 131; Vetter, 330 Mass. at 630; Heald, 7 Mass.App.Ct. at 291. Thus, the determination of separate identify is a factual question for the court.
In the present case, with the exception of the limited intrusion of the garage, shed and driveway, the lots have retained a separate identify. Here, Lot 180 holds the dwelling unit and a majority of the area of the accessory uses. In comparison, Lot 181 is almost entirely undeveloped and predominately wooded. While the limited intrusion is undeniable, there is no convincing evidence in the record indicating that Mc-Kenna or the prior owners were aware of it.[8] Furthermore, the deed to McKenna separately describes the lots as distinct parcels. Exhibit 2C; cf. Lindsay, 362 Mass, at 131 (two lots deeded as one parcel).
Although some of the evidence supports a contrary result, when taken together they are insufficient to support merger. First, although the Assessor has assessed Lots 180 and 181 as one since 1979, this action is not outcome determinative. Rather, this is just some evidence that another town body viewed the lots as one for tax purposes. Lindsay, 362 Mass. at 131. Second, the defendants’ reliance on the 1979 plan is inapposite. As discussed above, this plan only depicts Lot 180. Exhibit 5. It does not indicate an intent, or actual, merger of Lots 180 and 181.
In sum, this court finds that Lots 180 and 181 were not merged, that they remain separate lots, and that McKenna is therefore entitled to the protections of section 240-66 C(4) of the Falmouth bylaws.

ORDER

For the reasons stated herein, this court finds and rules in favor of the plaintiff. The decision of the Building Commissioner is overturned and the Board’s decision is reversed. A building permit shall issue for Lot 181 subject to the removal of all intruding accessory uses.

Although the lots were held in common ownership, they were deeded to McKenna as separate and distinct lots. Exhibit 2C (referring to each lot as a separate parcel).

Approximately nine feet of the garage extends into Lot 181. In total, the garage is fifteen feet wide and twenty-four feet long.

A concrete pad is attached to the shed. This also extends into Lot 181.

From this plan, the defendants infer that McKenna had combined Lots 180 and 181 into one lot. This inference is *732 inconsistent with the dimensions of the lot set out on the plan, which are the same as those of Lot 180.

In the application, McKenna’s counsel represented that she recognized that the removal of the garage was a condition for permit issuance.

In certain instances, the Massachusetts appellate courts have placed minimal emphasis on these factors. See e.g. Lindsay, 362 Mass. at 131 (“The mere fact that the [deeds] refer to [multiple lots] is insufficient to give rise to a presumption of intention to preserve the lots designated therein”); Vetter, 330 Mass. at 630 (‘There is nothing to show that any part of this tract had been physically walled off or separated in any way from any other part, if that would make a difference, which we do not decide”); Heald v. Zoning Bd. Of Appeals of Greenfield, 7 Mass.App.Ct. 286, 291 (1979) (“Assessment practices serve only as ‘some indication of the status of .the property’ "); see also Dowling v. Bd. of Health of Chilmark, 28 Mass.App.Ct. 547, 548-49 (1990) (holding that road separating the co-owned lots constituted a substantial physical barrier that prevented the use of the two parts of the property as a unit, because property was deeded together was not a buildable lot).

In addition, McKenna conceded in her application to the Building Commissioner that the garage would be removed as a pre-condition to the development of Lot 181.