BERNARD J. SHEA & another[1] *vs.* TOWN OF DANVERS. April 2, 1986.
*Zoning,* Special permit, Validity of by-law or ordinance, Access. *Practice, Civil,* Consolidation of actions. *Words,* "Shall."

The plaintiffs sought a special permit allowing access to a back parcel of land under the Danvers zoning by-law. The board of appeals denied the permit. In addition to taking an appeal from the denial of the permit under G. L. c. 40A, § 17, the plaintiffs brought this action in the Land Court under G. L. c. 185, §1 (*j*½), to test the validity of the special permit provisions of the town's zoning by-law. A judgment entered declaring that subsection I of § X, the special permit section, is the exclusive subsection "for determining whether access to and egress from land in a different district shall be allowed" and that the provisions of subsection K "do not apply." This is an appeal by the town which claims both subsections must be satisfied before a permit may issue. We reverse.

The plaintiffs are the buyer and the seller under a purchase and sale agreement for a parcel of land in Danvers which lies in two zoning districts. The portion of the property which is within 125 feet of a street called Garden Street lies in a "Residence II" district and the land which is more than 125 feet from Garden Street (by far the greater portion of the parcel) is within an "Industrial II" district. There is no access to the industrial land except from Garden Street through the portion of the property which lies in the residential zone.

In order to use the front portion for such access, the owner must obtain a special permit under § X of the zoning by-law. The plaintiffs applied for a permit and presented evidence at the hearing before the board of appeals

[1] Katherine DeCoulos.

that the intended use for the rear industrial property was for "mini-storage warehousing." The question is whether, as the judge found, only subsection I of the zoning by-law applies or whether, as the town claims, the board of appeals must also take into consideration the concerns such as traffic, drainage, and effect on the neighborhood which are listed in subsection K. Both subsections are set forth in the appendix to this opinion.

Citing *SCIT, Inc.* v. *Planning Bd. of Braintree,* 19 Mass. App. Ct. 101 (1984), the plaintiffs claim that the judge was correct. If subsection K applies, the zoning by-law is, they urge, invalid under G. L. c. 40A, §§ 4 & 9. Putting aside for the moment the plaintiffs' claims of invalidity, we first look at the two subsections themselves. Subsection I states that access "shall" be allowed if the conditions listed in that section are met. Subsection K provides that the general provisions contained therein "shall" apply to any special permit required under the by-law.

The problem thus arises from the use of "shall" in both subsections. Following the rule of construction that superficially discordant provisions of a by-law are to be construed in harmony, *Lee* v. *Board of Appeals of Harwich,* 11 Mass. App. Ct. 148, 154 (1981), we would have no difficulty in saying that, although more felicitous language could and should have been chosen, the import of the by-law is to require compliance with both subsections. Requirements of one section of a zoning by-law may not be ignored by reason of another section unless strictly necessary.

Since we must, if possible, construe the by-law so as to sustain its validity, *Doliner* v. *Town Clerk of Millis,* 343 Mass. 10, 15 (1961), we consider whether, as the plaintiffs argue, such a construction creates a conflict with G. L. c. 40A, §§ 4 and 9, thereby invalidating portions of the by-law. The plaintiffs rely on *SCIT, Inc.* v. *Planning Bd. of Braintree,* 19 Mass. App. Ct. 101 (1984), where we held invalid under §§ 4 and 9 a by-law which made *all* uses in a business district conditional on the issuance of a discretionary special permit.

In finding a conflict with c. 40A, § 4, in that case, we explained the purpose of § 4.[2] "The basic assumption underlying the division of a municipality into zoning districts is that, in general, each land use will have a predictable character and that the uses of land can be sorted out into compatible groupings." *Id.* at 107. This concept is explicit in § 4 and precludes conferring "on local zoning boards . . . a roving and virtually unlimited power to discriminate as to uses between landowners similarly situated." *Id.* at 108.

Here we are not concerned with uniform districts. We see nothing in § 4 which prevents a town from determining that use of residential land for

---

[2] General Laws c. 40A, § 4, as appearing in St. 1975, c. 808, § 3, provides: "Any zoning ordinance or by-law which divides cities and towns into districts shall be uniform within the district for each class or kind of structures or uses permitted."

access to industrial land presents special and often singular considerations. Provided adequate standards are established, a board of appeals may, without violating G. L. c. 40A, § 4, be given authority to weigh in the particular case whether access over the residential land would "impinge unreasonably upon the existing and prospective residential and other permitted uses." *Harrison* v. *Braintree,* 355 Mass. 651, 655 (1969). *Harrison* v. *Textron, Inc.,* 367 Mass. 540, 546 (1975).

In determining the feasibility of access from one district to another, a board is not departing from the uniformity required by § 4. The board is following the requirements because, after all, the "use of land in a residential district, in which all aspects of industry are barred, for access roadways for an adjacent [industrial use] violates the residential requirement." *Harrison* v. *Building Insp. of Braintree,* 350 Mass. 559, 561 (1966). The question is under what conditions should such a violation be allowed.

For similar reasons we find that, unlike the by-law in *SCIT, Inc.* v. *Planning Bd. of Braintree,* 19 Mass. App. Ct. 101 (1984), subsection K does not facially violate the first paragraph of § 9, set out in the margin.[3] We have construed § 9 to allow special permits for uses which are "often considered desirable but which would be incompatible in a particular district unless conditioned in a manner which makes them suitable to a given location." *Id.* at 109. Access is such a type of use and, as we have already indicated, the *Harrision* cases recognize that access may be made subject to special permits. We note that, under subsection K of the by-law, one matter to be considered is that the "public streets shall not become overloaded by [the] proposed use." We would be hard put to say that this concern must be ignored by the board of appeals in a residential neighborhood.

On the record before us, we cannot say that the by-law would be invalid if both subsections I and K of the by-law were to govern the issuance of a permit. We, of course, do not suggest that the board may apply the by-law to deny all access to the back land so to make the owners unable to use it at all.

The trial judge was troubled that the application of the by-law by the board was being challenged in two separate proceedings, the one at bar as well as an appeal under c. 40A, § 17, from the decision of the board of appeals denying the special permit. We share with the trial judge the concern of having two separate overlapping actions. If such circumstances arise in the future, the judge should consider seeking, through the Chief Administrative Justice of the Trial Court, consolidation of the two actions even if

---

[3] General Laws c. 40A, § 9, first paragraph, as appearing in St. 1975, c. 808, § 3, reads as follows: "Zoning ordinances or by-laws shall provide for *specific types of uses* which shall only be permitted in specified districts upon the issuance of a special permit. Special permits may be issued only for uses which are in harmony with the general purpose and intent of the ordinance or by-law, and shall be subject to general or specific provisions set forth therein; and such permits may also impose conditions, safeguards and limitations on time or use." (Emphasis supplied.)

the parties themselves do not apply to do so. Cf. *Konstantopoulos* v. *Whately,* 384 Mass. 123, 129-130 (1981).

The judgment is vacated and the case is remanded to the Land Court for the entry of a new judgment consistent with this opinion.

*So ordered.*

APPENDIX.

"I. Access to and egress from land in a different district shall only be allowed if no alternate access to or egress from is available. In such cases, access to and egress from land in a different district shall be allowed provided that:

a. The land is appurtenant to the land in the different district.

b. The width of the right-of-way is at least fifty-four (54) feet wide.

c. The right-of-way is at least seventy-five (75) feet from the adjoining lot lines in the more restricted district.

d. Screened areas fifteen (15) feet wide shall be provided in the buffer area on both sides of the right-of-way. The screened area shall abut the lot lines and be densely planted with shrubs or trees which are at least five (5) feet high at the time of planting which screening shall not obstruct the view of oncoming traffic when entering or exiting from the property. The planted material, in all respects, shall be maintained in a healthy condition.

e. Lots of land which are in existence at the time of adoption of this by-law and which because of their configuration and as a result of 2a, b and c above, at the time of the adoption of this by-law cannot be used for the less restricted use because of insufficient access, may be used in their entirety for the purposes of the adjoining district and all provisions of this by-law relating to the adjoining districts shall apply."

"K. The following general provisions shall apply to any special permit required by this by-law:

1. Unless otherwise specified in this by-law, the special permit granting authority is the Board of Appeals.

2. Any approval of a special permit which has been granted pursuant to this by-law shall lapse within two (2) years from the grant thereof, if a substantial use thereof has not sooner commenced, except for good

cause, or in the case of a permit for construction, if construction has not begun by such date, except for good cause.

3. The special permit granting authority may impose conditions, safeguards, and limitations both of time and use, as it may deem reasonably appropriate to protect the neighborhood or otherwise serve the purpose of this by-law.

4. Before granting a special permit, the special permit granting authority shall be satisfied that:

   a. The municipal water and sewer systems shall not become overloaded by the proposed use.

   b. The public streets shall not become overloaded by [the] proposed use. If traffic is expected to exceed three hundred (300) vehicles per day per acre, a service road (or a divided entrance drive, whichever is required by the special permit granting authority) shall be provided.

   c. The value of other land and buildings will not be depreciated by the proposed use.

   d. The specific site is an appropriate location for the use of structures.

   e. The use developed will not adversely affect the neighborhood.

   f. There will not be an undue nuisance or serious hazard to vehicles or pedestrians, and adequate and appropriate facilities will be provided to ensure the proper operation of the proposed use, structure and condition.

   g. The proposed use or structure will be in harmony with the general purpose of this by-law."

*Paul L. Kenny,* Town Counsel (*Anne M. DeSouza,* Assistant Town Counsel, with him) for the defendant.

*Michael P. McCarron* for the plaintiffs.