JOSEPH J. BRUNI, individually and as trustee,[1] & others[2] *vs.*
PLANNING BOARD OF IPSWICH (and a consolidated case[3]).

No. 07-P-125.

Suffolk. December 13, 2007. - February 10, 2009.

Present: PERRETTA, COHEN, & GRAINGER, JJ.

*Subdivision Control,* Plan, Approval of plan, Planning board, Decision of
planning board. *Limitations, Statute of. Municipal Corporations,* By-laws
and ordinances, Town meeting.

In consolidated actions in the Land Court, the judge did not err in relying on
an official zoning map in resolving the controversies presented, where the
applicable statute of limitations, G. L. c. 40A, § 5, barred the plaintiffs' chal-
lenge to the zoning map based upon inconsistencies with an article of a war-
rant for a town meeting [668-670]; and where the town meeting members
were not required separately to adopt the zoning map after the zoning boun-
dary lines had been redrawn pursuant to the article [670-671].

A town's planning board did not err in determining that a proposed access road
in a subdivision plan violated use restrictions applicable to a rural residence
district, where the proposed road met none of the criteria for a "street" with-
in the meaning of the town's zoning bylaw (i.e., it would not be used and
maintained as a public way by the town, it had not been shown on a plan
previously approved and endorsed by the planning board and recorded at the
registry of deeds, and it had not existed prior to the date on which the town
adopted subdivision control). [671-672]

CIVIL ACTIONS commenced in the Land Court Department on
November 16, 1999, and April 21, 2000.

After consolidation, the case was heard by *Karyn F. Scheier,*
J.

*Christopher J. Panos* (*Kathleen A. Rahbany* with him) for
Joseph J. Bruni & others.

---

[1]Of the Horseshoe Realty Trust.

[2]John J. Bruni, individually and as trustee of the Horseshoe Realty Trust,
and Alma Bruni.

[3]Joseph J. Bruni, individually and as trustee of the Horseshoe Realty Trust,
& others *vs.* Town of Ipswich.

*Katherine D. Laughman* for planning board of Ipswich & another.

PERRETTA, J. This appeal arises out of a Land Court judgment resolving (1) the plaintiffs' appeal pursuant to G. L. c. 41, § 81BB, from the denial by the planning board of Ipswich (board) of a definitive plan proposing to subdivide the locus owned by the plaintiffs; and (2) the complaint brought under G. L. c. 240, § 14A, by which the plaintiffs sought to determine the validity of the Ipswich protective zoning bylaw (bylaw) as applied to two lots included within their proposed subdivision (subdivision). The aim of the second action was to obtain a judicial revision of the official zoning map. The matters were consolidated for trial and thereafter submitted on a "Statement of Agreed Facts and Exhibits." In a detailed and comprehensive memorandum of decision, the Land Court judge affirmed the board's decision and concluded that the lots in question were properly depicted on the official zoning map. We affirm the judgment.

1. *The locus.* As appearing on the town assessor's maps 54A and 54C, the locus is comprised of five lots, 14A, 22, 22A, 23, and 24, and is roughly rectangular in shape. Proceeding from north to south, these five lots abut Essex Road along their western border with varying available frontage. The two most northern lots, 14A and 22, extend to the eastward boundary of the rectangle, whereas lots 22A, 23, and 24 do not. Lot 22 is shaped like an inverse letter "L" and extends southward behind and along the eastern boundary of lots 22A, 23, and 24 to a point that is roughly even with the southern boundary of lot 24. Lots 23 and 24 are located in a rural residence district whereas lots 22A, 22, and 14A are located in a highway business district.

2. *Background.* The controversy before us arises out of the plaintiffs' desire to develop a subdivision comprised of their five lots and to construct a way, Strawberry Lane, to run through lots 23 and 24 for purposes of providing access to the remaining portions of their property.

Under § IV(C) of the bylaw, the boundaries of the town's various zoning districts are established by depiction on an official zoning map that is incorporated by reference into the bylaw. Sec-

tion IV(C) provides in relevant part, subject to exceptions not here applicable:

> "The boundaries of . . . the said [zoning] districts . . . are hereby established as shown, and defined and bounded on the map accompanying this By-Law and on file with the Clerk of the Town of Ipswich titled 'Zoning Map of the Town of Ipswich, Massachusetts' . . . incorporated herein by reference."

By article 4 of a warrant (article 4) for a special town meeting held on October 23, 1995, the town voted to amend its zoning map by changing the boundaries of the highway business district. As here pertinent, article 4 proposed to

> "(3) . . . amend[] the Official Zoning Map of the Town of Ipswich to:
>
> "(a) change the boundaries of the Highway Business District as follows:
>
> ". . .
>
> "ii. The part of the Highway Business District generally situated approximately one thousand two hundred (1,200) feet, more or less, east of the intersection of Essex Road and County Road shall be widened from its current width of approximately three hundred (300) feet extending south from the center line of Essex Road, to a width that is measured along the rear property line of all properties having frontage on Essex Road as of September 1, 1995. *The above-described business-zoned area is further described as including all or portions of the following lots* (Assessor's Maps dated 1/1/95):

| "*Assessor's Map* | *Lots* |
|---|---|
| 54C | 22A, 23, 24 |
| 54A | . . . 14A, 22 . . . |

> "and as shown on the attached map (Inset B)."[4] (Emphasis supplied.)

---

[4]Town meeting members were provided with copies of article 4 and the

As stipulated by the parties, article 4 related to lot 22 of the town assessor's map 54C, not 54A; the portion of the land that comprised the highway business district was located further than 1,200 feet east of the intersection of Essex and County Roads; and "[a]ny modifications to the Ipswich Zoning Map resulting from Article 4 of 1995 would have been subject to appeal pursuant to G. L. c. 40A, § 5."

Although the text of article 4 identified "all or portions" of lots 23 and 24 as being within the highway business district, the map designated as inset B displayed lots 23 and 24 as being within the "rural residence A" district. In any event, article 4 was approved by the Attorney General on January 29, 1996, in accordance with the provisions of G. L. c. 40, § 32,[5] and a revised zoning map was placed on file with the Ipswich town clerk sometime in 1996. The map reflected the boundaries depicted on inset B. Thus, as of January, 1997, the town's official zoning map showed lots 14A, 22, and 22A as being located within the high-way business district while lots 23 and 24 were situated within the rural residence district.

On July 7, 1997, one of the plaintiffs, Joseph J. Bruni (Bruni), filed a preliminary subdivision plan with the board in which he proposed to subdivide the locus, see part 1, *supra*, into three lots that would be served by an access road laid out primarily over lots 23 and 24.[6] The board approved the preliminary subdivision plan with conditions. Bruni thereafter applied to the board

---

attached inset B. Also, an enlarged copy of inset B was placed on display at the town meeting.

[5]As here pertinent, G. L. c. 40, § 32, reads:

"Except to the extent that a zoning by-law may take effect as provided in section five of chapter forty A, before a by-law takes effect it shall be approved by the attorney general or ninety days shall have elapsed without action by the attorney general after the clerk of the town in which a by-law has been adopted has submitted to the attorney general a certified copy of such by-law with a request for its approval, a state-ment clearly explaining the proposed by-law, including maps and plans if necessary, and adequate proof that all of the procedural requirements for the adoption of such by-law have been complied with. Such request and proof shall be submitted by the town clerk within thirty days after final adjournment of the town meeting at which such by-law was adopted."

[6]Bruni is record owner of lot 23 and record coowner of lot 24.

for approval of a definitive subdivision plan, dated January 9, 1998, and entitled "Definitive Subdivision Plan, Bruni Village, Ipswich, Massachusetts." See generally G. L. c. 41, §§ 81K et seq. The definitive plan was materially similar to the preliminary plan and depicted lots 23 and 24 as being within the rural residence A district.[7]

The board disapproved the definitive subdivision plan on the basis that it violated the bylaw. In doing so, the board noted that the rural residence district was intended for single-family residential uses and that commercial or multifamily residential uses were prohibited in that district, whereas the converse was true of the highway business district, wherein commercial and multifamily residential uses were permitted and single-family residential uses were disallowed. The board reasoned that to allow the use of lots 23 and 24 to provide access to the highway business district would violate the use regulations pertaining to rural residence districts.[8]

3. *The Land Court proceedings.* The plaintiffs challenged the legal basis for the board's denial of their subdivision plan as well as the validity of the zoning map as applied to lots 23 and 24. Relying upon so much of article 4 as purported to include "all or portions" of lots 23 and 24 within the highway business district, the plaintiffs asserted that the town meeting members had amended the bylaw in 1995 to include lots 23 and 24 within that district and that the town's official zoning map was in error because it did not accurately reflect that action.[9]

The judge concluded that the plaintiffs' challenge to the zoning map based on alleged inconsistencies between it and article 4 was time barred by G. L. c. 40A, § 5; that the zoning map was, therefore, applicable to lots 23 and 24; and that as shown

_____

[7] We note that in October, 1998, and again in October, 1999, Ipswich town meeting members considered but did not approve warrant articles proposing to rezone lots 23 and 24 to include them in the highway business district.

[8] All the lots shown on the definitive subdivision plan met the dimensional, area, and frontage requirements of the bylaw. In its decision the board stated that if Bruni were to address its stated reasons for disapproving the plan, the board would revoke its disapproval of the proposed subdivision and approve the plan subject to conditions set out in the decision and which are not contested in the appeal before us.

[9] It does not appear that the plaintiffs raised any challenge before the board concerning the validity of the zoning map.

on the zoning map, lots 23 and 24 were located within a rural residence A district. Seeing no error in the board's findings with respect to the zoning of the lots in issue or its conclusion that the proposed access road violated the use restrictions of the bylaw, the judge affirmed the board's denial of the plaintiffs' proposed subdivision plan.

4. *Discussion.* On appeal the plaintiffs argue that the judge erred in concluding that lots 23 and 24 are situated in an area zoned for rural residential use. Their arguments are (1) the language of article 4 contradicted the zoning map and controlled the zoning of the lots in issue; and (2) the map placed on file with the town clerk in 1996 is without legal force and effect because it was never adopted in accordance with G. L. c. 40A, § 5. The plaintiffs alternatively contend that even if the judge correctly determined that lots 23 and 24 are zoned for rural residential use, disapproval of the definitive subdivision plan was nonetheless erroneous as the bylaw permits, as of right, the use of land for a "street" in the rural residence A district.

a. *The challenge to the zoning map.* The plaintiffs have provided no support for their contention that the judge erred in relying upon the official zoning map in resolving the present controversy. Where district boundaries are defined by an official zoning map, "[a] land owner is . . . bound by this map unless, carrying the burden of proof, he can demonstrate that a different boundary was intended." *Jenkins* v. *Pepperell*, 18 Mass. App. Ct. 265, 269 (1984). Their arguments fail for two reasons.

i. *The statute of limitations.* We agree with the judge's determination that the plaintiffs' challenge to the zoning map based upon inconsistencies in article 4 is barred by the limitations period set out in G. L. c. 40A, § 5. That statute prescribes the procedures a town must follow in adopting or amending a zoning bylaw. See *Durand* v. *IDC Bellingham, LLC*, 440 Mass. 45, 52 (2003). The tenth and final paragraph of § 5, as amended by St. 1987, c. 685, § 3, provides in relevant part:

> "No claim of invalidity of any zoning . . . by-law arising out of any possible defect in the procedure of adoption or amendment shall be made in any legal proceedings . . . unless legal action is commenced within the time period

specified in sections thirty-two and thirty-two A of chapter forty and notice specifying the court, parties, invalidity claimed, and date of filing is filed together with a copy of the petition with the town . . . clerk within seven days after the commencement of the action."

Because G. L. c. 40, § 32A, pertains to publication of ordinances by cities, it is irrelevant to our analysis. That being so, we next turn our attention to G. L. c. 40, § 32, amended by St. 1975, c. 808, § 1.

The first paragraph of § 32 requires a town to give public notice of the adoption or amendment of a zoning bylaw by any one of several specified ways of posting or by publication of the adopted or amended bylaw twice, at least one week apart, in a newspaper of general circulation within the town. Section 32 goes on to provide:

> "[Such notice] shall include a statement that claims of invalidity by reason of any defect in the procedure of adoption or amendment may only be made within ninety days of such posting or of the second [newspaper] publication."

Otherwise put, claims based upon allegations of a procedural defect in the adoption of a zoning bylaw or amendment are time barred unless brought within ninety days from the date of a town's satisfactory notice of such adoption or amendment.

There is nothing in the parties' statement of agreed facts or the record to show when or by what means the town gave notice of the adoption of article 4, and the judge made no express finding on this question.[10] However, the plaintiffs make no argument that the town failed to satisfy the publication requirements of G. L. c. 40, § 32. In light of the fact that more than three years had passed since the amendment's adoption and approval by the Attorney General and in the absence of evidence to the contrary, the judge could reasonably infer that the ninety-day limitations period had expired prior to the time that the plaintiffs filed the

---

[10]The judge's findings do indicate that article 4 and inset B were published in the Ipswich Chronicle on October 5, 1995. However, that lone finding does not establish the date upon which the limitation period began to run.

present action. That being so, the question becomes whether the judge correctly determined that the plaintiffs' claim was a "claim of invalidity of [a] zoning . . . by-law arising out of [a] possible defect in the procedure of adoption or amendment." G. L. c. 40A, § 5.

ii. *Adoption of the revised zoning map.* Although the plaintiffs couch their claim as one of error in the revised zoning map, the inconsistency that forms the basis of their claim is found in article 4 considered at the special town meeting and not in the revision of the map. Their argument is that the map placed on file with the town clerk in 1996 is without legal force and effect because it was never adopted in accordance with G. L. c. 40A, § 5. The essence of their argument, as best we understand it, is that after having voted to amend the zoning map, the town was required to adopt the zoning map after the boundary lines had been redrawn pursuant to article 4. As support for their argument, the plaintiffs cite to excerpts from two communications issued by the office of the Attorney General, as amended at various times, in connection with the review of unrelated zoning bylaw amendments pursuant to G. L. c. 40, § 32. Only one of these communications appears in the record. Although the plaintiffs quote selectively from the second, they do so only with citation to an outdated Web page and without compliance with Mass.R.A.P 16(g), as amended, 405 Mass. 1701 (1989).

Notwithstanding the plaintiffs' failure to comply with the various rules of appellate procedure, we note that in each of the Attorney General's communications, he advised a town that it would or might be required to vote to approve a zoning map subsequent to amending its bylaw. In the absence of evidence or appellate argument to the contrary, we presume for present purposes that the zoning map was validly adopted by the town at some point prior to 1995. In adopting article 4, Ipswich town meeting members expressly voted to "amend[] the Official Zoning Map of the Town" in the manner therein set forth. The amendment was approved and, it is presumed, published in accordance with G. L. c. 40, § 32. As provided by G. L. c. 40A, § 5, and § XI.P of the bylaw, that zoning change took effect as of October 23, 1995, the date upon which town meeting members approved article 4.[11]

---

[11]General Laws c. 40A, § 5, provides that "[t]he effective date of the . . .

Moreover, we see nothing in either of the Attorney General's two communications that supports the plaintiffs' contention that the town was required to adopt the zoning map separate and apart from article 4. In the first instance, the warrant articles therein discussed are not in the record before us. Consequently, it is impossible to determine with certainty that the actions referred to in those communiques concerned warrant articles approving changes to the textual descriptions of district boundaries in their respective zoning bylaws. Rather, the Attorney General's communications indicate only that if the text adopted under the warrant resulted in a change to the boundaries shown on the town's zoning map, the town would also be required to amend its existing map or adopt a different map to reflect the textual change to the bylaw and any such amendment to the bylaw would have to be effectuated in accordance with the mandates of G. L. c. 40A, § 5. As explained, the town's actions here under scrutiny did not involve a textual change in the description of a district boundary. Rather, it concerned a change to the zoning map itself.

In adopting article 4, the town meeting members expressly voted to "amend[] the Official Zoning Map of the Town" in the manner therein set forth. On that basis and as the plaintiffs have failed to show otherwise, we conclude that the amendment took effect as of the date of the special town meeting, that is, October 23, 1995, and that no further town meeting was required by G. L. c. 40A, § 5.

b. *The challenge to the board's decision.* We see no error in the board's determination that the proposed access road, Strawberry Lane, violated the use restrictions applicable to a rural residence A district. As earlier explained, the board denied the plaintiffs' request for approval of their subdivision plan on the basis that to allow the use of lots 23 and 24 to provide access to the highway business district would violate the use regulations

---

amendment of any zoning . . . by-law shall be the date on which such . . . amendment was voted upon by a . . . town meeting." Section XI.P of the bylaw states that "[t]he effective date of the adoption or amendment of this Bylaw shall be the date on which such adoption or amendment was vote[d] upon by the Town Meeting." See Healy, Massachusetts Zoning Manual § 3.4.9, at 3-25 (4th ed. 2007) ("A zoning bylaw that is approved . . . by the attorney general and that has been [published in accordance with G. L. c. 40, § 32,] becomes effective as of the date of the town meeting vote").

pertaining to rural residence districts. As held in *Beale* v. *Planning Bd. of Rockland*, 423 Mass. 690, 694 (1996),

> "Use of land in one zoning district for an access road to another zoning district is prohibited where the road would provide access to uses that would themselves be barred if they had been located in the first zoning district. In such a situation, the access is considered to be in the same use as the parcel to which the access leads."

See *Dupont* v. *Dracut*, 41 Mass. App. Ct. 293, 295-296 (1996).[12] Contrast *Harrison* v. *Textron, Inc.*, 367 Mass. 540, 549 (1975) (use of *public* way not restricted by local zoning provisions).

Because a "street" is a permitted use as of right within a rural residence A district, the plaintiffs argue that the bylaw allows the use of lots 23 and 24 for access to those portions of the proposed subdivision located within the highway business district. The flaw in the plaintiffs' argument is that Strawberry Lane is not a "street" within the meaning of the bylaw.

As defined in § III of the bylaw, a "street" is a "way" that, in addition to other requirements, (1) is used and maintained "as a public way by the Town"; (2) is "shown on a plan previously approved and endorsed by the Planning Board and recorded at the Registry of Deeds"; or (3) "exist[ed] prior to the date on which subdivision control was adopted by the Town." Strawberry Lane meets none of the criteria.

*Judgment affirmed.*

---

[12]That is not to say that a municipality or town, in appropriate circumstances, may not affirmatively authorize the use of land for access to property located in a less restrictive zoning district. See *Harrison* v. *Braintree*, 355 Mass. 651, 655-656 (1969); *Shea* v. *Danvers*, 21 Mass. App. Ct. 996, 997-998 (1986).